COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


H. J. HOLZ & SON, INC. AND
 UNITED CONTRACTORS OF VIRGINIA
 GROUP SELF-INSURANCE ASSOCIATION

                                            OPINION BY
v.   Record No. 2063-01-2            JUDGE LARRY G. ELDER
                                          MARCH 19, 2002
MATHILDA KARREN DUMAS-THAYER


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Linda M. Gillen (Blair Law Offices, on
            brief), for appellants.

            Robert L. Flax for appellee.


        H. J. Holz & Son, Inc., and United Contractors of Virginia

Group Self-Insurance Association (hereinafter collectively

"employer") appeal from a decision of the Workers' Compensation

Commission requiring employer to pay for chiropractic treatment

rendered to former employee Mathilda Karren Dumas-Thayer

(claimant) and to provide her with a panel from which to choose

a new treating physician. We hold the record supports the

commission's conclusion that good reason existed under Code

§ 65.2-603(C) to hold employer financially responsible for

claimant's chiropractic treatment because claimant acted in good

faith, the treatment provided by employer was inadequate, and

the alternative treatment was medically reasonable and

necessary. We also hold the evidence that the treatment

provided by employer was inadequate in terms of pain relief and joint function supported the commission's conclusion that employer must provide claimant with a panel from which to choose a new treating physician.  Thus, we affirm the commission's decision.

## I.

## BACKGROUND

On February 2, 2000, claimant sustained a compensable injury to her lower back and left hip while working as a painter for employer.  Following the injury, she received temporary total and temporary partial disability compensation pursuant to awards entered by the commission.  She was released to full duty on October 4, 2000, and her compensation award was terminated as of October 6, 2000.[1]

Claimant initially received treatment from Patient First of Chester and was referred to Dr. William D. Henceroth, an orthopedic surgeon at the West End Orthopedic Clinic.  At the direction of Dr. Henceroth, claimant also was treated by his associates, Drs. Charles W. Vokac and E. Claiborne Irby, Jr.  While under the care of these doctors, claimant underwent various diagnostic testing and treatment, including injections,

---

[1] Claimant sought ongoing disability compensation, but the deputy commissioner found she was able to return to her pre-injury employment, and the commission concluded she failed to file a timely request for review of that finding.  She did not appeal the commission's ruling to this Court.

-

physical therapy and work hardening, but she continued to complain of left hip pain, low back pain and left leg weakness.

On October 4, 2000, Dr. Vokac observed that all claimant's tests were negative but that a functional capacity evaluation (FCE) was "inconclusive" and claimant could not tolerate work hardening. He then wrote,

> At this point I don't think there is anything else that I have to offer her and based on the fact that testing was within normal limits and the FCE was inconclusive, I will release her to full duty without restrictions. She is concerned that she cannot perform this and I asked her to discuss with her case manager her options under work comp. guidelines.

Claimant apparently sought a referral to Elliot Eisenberg, a chiropractor, but that request was denied. Despite that denial, claimant began treating with Eisenberg on October 10, 2000. On October 16, 2000, after claimant had undergone three visits to Eisenberg, he reported that claimant had begun to experience significant relief. Eisenberg wrote to Drs. Vokac and Henceroth to request a workers' compensation referral, but no such referral was made at that time.

On November 27, 2000, following additional chiropractic treatment for a total of twenty-two visits, Eisenberg again wrote to Dr. Vokac, noting that claimant had experienced "some improvement" with chiropractic treatment but had "reached a plateau." Eisenberg indicated he suspected claimant might be suffering from "a trochanteric bursal tear, a tear of the

-

restraining ligaments of the hip, or the tensor fascia lata," or a hip dislocation.  Eisenberg noted his inability to perform the "more involved diagnostics" necessary to confirm or dispel these suspicions, and he asked that claimant be allowed to return to Dr. Vokac for additional evaluation.

On December 1, 2000, claimant returned to Dr. Vokac.  He noted claimant's report that chiropractic treatment had "helped her significantly," and he documented a range of motion greater than on previous examination.  Dr. Vokac also wrote, "now that we know that chiropractic treatment has helped[,] . . . so [claimant] can be reimbursed for the treatments, I will just state in my note that chiropractic treatment does appear to be helpful and appropriate in this situation."  Dr. Vokac apparently also considered additional diagnostic testing, based on Eisenberg's suspicions.  However, in a letter to employer's workers' compensation case manager dated December 18, 2000, Dr. Vokac indicated he had consulted with Drs. Henceroth, Irby and others and concluded that additional testing was not supported by the objective findings on examination of claimant.  Dr. Vokac then noted, "[w]ith regards to the chiropractic treatment[s], as I told you, they seem to have helped per the patient's report. I don't think it is unreasonable that some chiropractic visits were performed.  It does not seem unreasonable for me to have [claimant] undergo 5 to 10 chiropractic visits."  A copy of this letter was sent to claimant.

-

From November 30, 2000 through January 16, 2001, claimant underwent eleven additional chiropractic treatments.

Following a hearing on claimant's application for a change in treating physicians and payment for chiropractic treatment already rendered, the deputy commissioner ordered employer to provide claimant with a new panel from which to choose a new treating physician. The deputy commissioner also held employer responsible for the chiropractic treatment previously provided by Chiropractor Eisenberg.

The commission, with one dissent, affirmed the deputy's award. It noted Dr. Vokac's opinion that "chiropractic treatment was not unreasonable." It held that Drs. Vokac and Irby provided "more than adequate treatment relative to pharmacological treatment and evaluation based on objective diagnostic studies" but that the treatment nevertheless was inadequate because it "was not alleviating [claimant's] complaints" of pain. Thus, based on evidence that the chiropractic treatment was reasonable and necessary and that the treatment claimant had been receiving was inadequate in terms of pain relief, it concluded employer should be responsible for the chiropractic treatment. Although Dr. Vokac had opined such treatment should be limited to five or ten occasions, the commission accorded less weight to this part of his opinion because Dr. Vokac did not see claimant after she had received ten treatments from Eisenberg and saw her only after she had

-

treated with him "on more than twenty occasions." Thus, the commission held employer responsible for all of the chiropractic treatments rendered by Eisenberg.

The commission also held that claimant was entitled to select a new treating physician from a panel provided by employer based on its finding that "claimant was not receiving effective treatment on the basis of palliative pain relief and joint function."

## II.

## ANALYSIS

On appeal of a decision of the commission, we construe the evidence in the light most favorable to the party prevailing below, and we must uphold the commission's findings of fact if the record contains credible evidence to support them. See, e.g., Lynchburg Foundry Co. v. Goad, 15 Va. App. 710, 712, 427 S.E.2d 215, 217 (1993).

## A.

## PAYMENT FOR CHIROPRACTIC TREATMENT

The Workers' Compensation Act contains the following provisions regarding medical treatment for injured employees:

> A. 1. As long as necessary after an accident, the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician chosen [in accordance with the Act] and such other necessary medical attention. . . .
>
> *   *   *   *   *   *   *

-

C.  __If__ in an emergency or on account of the employer's failure to provide the medical care during the period herein specified, or __for other good reasons__, a physician other than provided by the employer is called to treat the injured employee, during such period, the reasonable cost of such service shall be paid by the employer if [the employer is] ordered to [make such payment] by the Commission.

D.  As used in this section . . . , the terms "medical attention," "medical service," "medical care," and "medical report" shall be deemed to include chiropractic service or treatment . . . .

Code § 65.2-603 (emphases added).

We have held, under the "other good reasons" test of Code § 65.2-603(C), that

if the employee, without authorization but in good faith, obtains medical treatment different from that provided by the employer, and it is determined that the treatment provided by the employer was inadequate treatment for the employee's condition and the unauthorized treatment received by the claimant was medically reasonable and necessary treatment, the employer should be responsible, notwithstanding the lack of prior approval by the employer.  __See__ 2 A. Larson, __Workmen's Compensation Law__ § 61.12(e) (1992).

__Shenandoah Prods., Inc. v. Whitlock__, 15 Va. App. 207, 212, 421 S.E.2d 483, 486 (1992).  We emphasized that "[r]eimbursement for unauthorized medical treatment should be the rare exception" and that "[w]hen an employee seeks treatment other than that provided by the employer or ordered by the commission, he or she does so at his or her own peril and risks not being reimbursed."

-

Id. at 213, 421 S.E.2d at 486.  However, where the record supports a conclusion by the commission that the employee acted in good faith, that the treatment provided by the employer was inadequate, and that the alternative treatment was medically reasonable and necessary, the employee is entitled to payment for that alternative treatment.  See id. at 212-13, 421 S.E.2d at 486.

Whether the employee acted in good faith is a credibility determination.  See Christiansen v. Metro Bldg. Supply, 18 Va. App. 721, 724, 447 S.E.2d 519, 521 (1994), modified on reh'g on other grounds, 19 Va. App. 513, 453 S.E.2d 302 (1995).  Thus, we will uphold a finding of good faith made by the commission if the record contains credible evidence to support that finding. Id.  An employee's effort to obtain the approval of the treating physician or the employer before obtaining alternative treatment is evidence of good faith.  See Whitlock, 15 Va. App. at 213, 421 S.E.2d at 486.  Here, the evidence, viewed in the light most favorable to claimant, indicates that claimant's treating physician, Dr. Vokac, released her to full duty after opining that he did not "think [he had] anything else . . . to offer her."  Claimant then "requested referral" to Chiropractor Eisenberg for treatment, but her request was denied.  Only after Dr. Vokac opined that he had nothing else to offer her did she obtain alternative treatment.  Thus, the record contains

-

credible evidence to support the commission's finding that claimant acted in good faith.

We hold the evidence also supports the commission's determination that the treatment provided by Dr. Vokac and his associates was inadequate and that the alternative treatment provided by Chiropractor Eisenberg was reasonable and necessary. "[T]he question of whether the disputed medical treatment was necessary within the meaning of Code § 65.2-603 is a mixed question of law and fact." Goad, 15 Va. App. at 712-13, 427 S.E.2d at 217. Similarly, we hold that the question of whether the treatment provided by the employer was inadequate is also a mixed question of law and fact. Thus, the commission's conclusions regarding the necessity of the alternative treatment and inadequacy of the treatment actually provided are not binding on appeal. See id. In reviewing these issues, we are guided by the principle that the opinion of the treating physician is entitled to great weight. See, e.g., Fingles Co. v. Tatterson, 22 Va. App. 638, 641, 472 S.E.2d 646, 647 (1996). However, "[m]edical evidence is not necessarily conclusive[; it] is subject to the commission's consideration and weighing." Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 214 (1991).

Here, the record supports the commission's conclusion that the treatment claimant was receiving was inadequate and that the chiropractic treatment she obtained was reasonable and

-

necessary.  The Workers' Compensation Act requires that an "employer shall furnish or cause to be furnished . . . <u>necessary medical attention</u>."  Code § 65.2-603(A)(1) (emphasis added).  We hold, in keeping with prior decisions of the commission, <u>see, e.g.</u>, <u>Davis v. Old Oak Mining</u>, No. 132-47-97, 1997 WL 1081372 (Va. Workers' Comp. Comm'n May 19, 1997), that "necessary medical attention" as that phrase is used in Code § 65.2-603(A)(1) includes palliative treatment.  5 Arthur Larson & Lex K. Larson, <u>Larson's Worker's Compensation Law</u> §§ 94.04, 94.04(D) (2001) (noting that majority of jurisdictions provide coverage for palliative treatment); <u>see</u> <u>Grand Lodge Free & Accepted Masons v. Jones</u>, 590 N.E.2d 653, 655 (Ind. Ct. App. 1992) (noting that palliative treatment methods are allowed "even under Indiana's restrictive [workers' compensation] statute," Ind. Code § 22-3-3-4); <u>Harris v. Diamond Constr. Co.</u>, 184 Va. 711, 718 n.2, 36 S.E.2d 573, 576 n.2 (1946) ("'The holding of the Indiana court is peculiarly persuasive with us because the Virginia act is based upon that of Indiana.'" (quoting <u>Basham v. R.H. Lowe, Inc.</u>, 176 Va. 485, 494, 11 S.E.2d 638, 642 (1940)); <u>see also</u> <u>Barry v. Western Elec. Co.</u>, 485 So. 2d 83, 92 (La. Ct. App. 1986); <u>In re Levesque</u>, 612 A.2d 1333, 1334 (N.H. 1992); <u>Hanrahan v. Township of Sparta</u>, 665 A.2d 389, 394 (N.J. Super. Ct. App. Div. 1995); <u>Trafalgar House v. Green</u>, 784 A.2d 232, 234-36 (Pa. Commw. Ct. 2001).  Further, we agree with the commission's holding "'that when a claimant

-

changes physicians without authorization and realizes appreciable benefit and relief from said change, that treatment is considered necessary.'" See Dell'Orco v. Elec. Data Sys. Corp., No. 180-19-28, 1999 WL 1092293 (Va. Workers' Comp. Comm'n Oct. 29, 1999) (quoting Wiggins v. Planters Peanuts, 62 O.I.C. 510, 512 (1983)).

Here, credible evidence in the record established that claimant continued to experience pain while under the care of Dr. Vokac, and Dr. Vokac indicated on October 4, 2000, "I don't think there is anything else that I have to offer her." Thereafter, claimant obtained chiropractic treatment, which she reported "helped her significantly," and Dr. Vokac documented an improvement in her range of motion after twenty-two chiropractic visits. Dr. Vokac discussed the impact of the chiropractic treatment with claimant and opined that it appeared to be both "helpful and appropriate" and that claimant's obtaining such treatment was "not unreasonable." Thus, credible evidence supports the commission's conclusion that the treatment claimant had received was inadequate because it did not relieve her pain and that the chiropractic treatment she obtained on her own was reasonable and necessary because it provided her with significant pain relief.

Finally, the record supports the commission's conclusion that employer should be responsible for all of claimant's chiropractic visits. Although Dr. Vokac opined that five to ten

-

visits would have been reasonable, he did so only after claimant had undergone over twenty visits. The commission was entitled to weigh his opinion in light of the treatment claimant actually received and to conclude that the greater number of visits was appropriate.

B.

AUTHORITY TO SELECT NEW TREATING PHYSICIAN

We previously have acknowledged that the commission may order a change in a claimant's treating physician if, inter alia, "'inadequate treatment is being rendered; it appears that treatment is needed by a specialist in a particular field and is not being provided; [or] no progress [is] being made in improvement of the employee's health condition without any adequate explanation.'" Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 675, 508 S.E.2d 335, 341 (1998) (quoting Powers, 68 O.I.C. at 211).

Here, the commission found that Dr. Vokac's treatment was "more than adequate . . . relative to pharmacological treatment and evaluation based on objective diagnostic studies" but that it was inadequate in terms of "palliative pain relief and joint function." After Dr. Vokac opined on October 4, 2000 that he did not have "anything else . . . to offer [claimant]" from an orthopedic standpoint, claimant obtained additional medical treatment on her own. The record supports a finding that the additional treatment both improved claimant's range of motion

-

and alleviated some of her pain.  As previously discussed, treatment for palliative care qualifies as "necessary medical treatment" under Code § 65.2-603 where, as here, the commission finds credible a claimant's complaints of continuing pain. Thus, the record supports the commission's finding that Dr. Vokac's treatment was inadequate in terms of "palliative pain relief and joint function."  The record further supports the commission's decision requiring employer to furnish claimant with a panel of "physiatrists and/or pain management specialists" from which to choose a new treating physician.

For these reasons, we hold the evidence supports the commission's decision ordering employer (1) to pay for chiropractic treatment rendered to claimant by Elliot Eisenberg and (2) to provide claimant with a panel of "physiatrists and/or pain management specialists" from which to choose a new treating physician.  Therefore, we affirm the commission's decision.

<u>Affirmed.</u>

-