COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


REBECCA L. LOCKSMITH
                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 2798-03-2            JUDGE ROBERT J. HUMPHREYS
                                                          MAY 11, 2004
CHIPPENHAM HOSPITAL AND
 CONTINENTAL INSURANCE COMPANY


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Gregory O. Harbison (Geoffrey R. McDonald & Associates, P.C., on
          brief), for appellant.

          Kari Lou Frank (Lisa Frisina Clement; PennStuart, on brief), for
          appellees.


       Rebecca L. Locksmith appeals a decision of the Workers' Compensation Commission,

denying her claim for temporary total disability benefits, permanent partial disability benefits,

and payment of certain medical benefits.  For the reasons that follow, we affirm the decision of

the commission.

       On brief, Locksmith contends only that the commission erred in finding:  1) that her

claims for temporary total and permanent partial disability benefits were time barred, because it

interpreted the term "repair," as it appears in Code § 65.2-708(A), too narrowly; and, 2) that her

medical treatment was unauthorized, because "[e]ven if the [c]omission did not accept

[Locksmith's] testimony regarding her notification of her new address and request for a panel in

---

      [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.  Moreover,
as this opinion has no precedential value, we recite only those facts necessary to our holding.

January 1999 and April 1999, the evidence [was] clear that she reiterated this request in May 2002."

Relevant to Locksmith's first question presented, Code § 65.2-708(A) provides:

> Upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded . . . . *No such review shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title, except*: (i) thirty-six months from the last day for which compensation was paid shall be allowed for the filing of claims payable under § 65.2-503 and certain claims under subsection B of § 65.2-406 or (ii) *twenty-four months from the day that the claimant undergoes any surgical procedure compensable under § 65.2-603 to repair or replace a prosthesis or orthosis*.

(Emphases added).

Locksmith argues that, although she was last paid benefits (as a result of her 1996 work-related knee injury) more than 36 months prior to her 2002 filings of several change-in-condition applications, the commission erred in denying benefits related to her June 18, 2002 knee surgery because the surgery entailed a "repair" of her knee prosthesis. We disagree and affirm the decision of the commission.

We first note that the commission's interpretation of the term "repair," as it is used in Code § 65.2-708, is a conclusion of law that is not binding on this Court. Thomas Refuse Service v. Flood, 30 Va. App. 17, 20, 515 S.E.2d 315, 317 (1999). Nevertheless, "the commission's construction of the Workers' Compensation Act is entitled to great weight on appeal." Id. (citing Wiggins v. Fairfax Park Ltd. Pshp., 22 Va. App. 432, 441, 470 S.E.2d 591, 596 (1996)).

It is well settled that "when analyzing a statute, we must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by

those words as we interpret the statute.'" City of Virginia Beach v. ESG Enterprises, Inc., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (citation omitted). "The main purpose of statutory construction is to determine the intention of the legislature 'which, absent constitutional infirmity, must always prevail.'" Last v. Virginia State Bd. of Med., 14 Va. App. 906, 910, 421 S.E.2d 201, 205 (1992) (quoting Board of Supervisors v. King Land Corp., 238 Va. 97, 103, 380 S.E.2d 895, 897 (1989)). "When, as here, a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." Hubbard v. Henrico Ltd. Pshp., 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998). We may not, by interpretation or otherwise, "add to a statute language which the legislature has chosen not to include." County of Amherst Bd. of Supervisors v. Brockman, 224 Va. 391, 397, 297 S.E.2d 805, 808 (1982).

In contexts unrelated to workers' compensation, the Supreme Court of Virginia has defined "repair" as "to fix or 'restore . . . what is torn or broken.'" Montgomery v. Columbia Knoll Condominium Council of Co-Owners, 231 Va. 437, 439, 344 S.E.2d 912, 913 (1986) (quoting Webster's Third New International Dictionary 1923 (1981)). To "repair" an item is to "restore [the item] by replacing a part or putting together what is torn or broken" - to "restore [it] to a sound or healthy state." Webster's Third New International Dictionary 1923 (1993).

Dr. Wallskog's notes pertaining to Locksmith's June 18, 2002 surgery stated as follows, in relevant part:

> Medial and lateral gutters were normal. Suprapatellar pouch revealed a large area of hypertrophic tissue from the superior aspect of the patella. The patella was evaluated. There was a linear area of wear in the patellar component which matched with the roof of the notch. This defect in the patellar component articulated with the roof of the notch of the femoral component approximately 60 degrees of flexion. Otherwise the femoral interfaces were normal. The femoral box as well as the tibial post were otherwise normal with minimal evidence of polyethylene wear. There was a small amount of medial and lateral

- 3 -

> pseudomeniscus. However, this did not appear to be significantly erythematous. Next, a shaver was then used to remove the medial and lateral pseudomeniscus which was within the joint and which did impinge between the femoral component and the tibial polyethylene. This was removed in its entirety. Attention was then turned back to the patella. A significant amount of hypertrophic redundant synovium and fibrous tissue from the superior aspect of the patella. I was concerned that this may be causing some degree of patellar clunk syndrome. An arthroscopic shaver was placed in the anterolateral port and in the superolateral portal to remove this redundant tissue. This was removed in its entirety. . . . The patellar tracking was evaluated and was otherwise excellent.

In letters dated June 24, 2002 and August 26, 2002, Dr. Wallskog opined that Locksmith's symptoms and need for continuing treatment and surgery were "directly related to her initial as well as follow-up knee replacement." Nevertheless, Dr. Wallskog's notes do not indicate that the prosthesis itself required repair during the June 18, 2002 surgery, nor that such a repair was undertaken during that surgery. In fact, in his June 24, 2002 letter, Dr. Wallskog specifically stated that the surgery was performed for purposes of "debridement of *scar tissue*." (Emphasis added). Thus, although Dr. Wallskog's notes indicate that he observed some "wear" of the prosthesis, there is simply no evidence to suggest that Locksmith's prosthesis was "repair[ed]" during the surgery at issue. Instead, Dr. Wallskog merely removed portions of Locksmith's own bodily tissue, in an effort to improve the environment surrounding the prosthesis.

As stated above, we must assume that the General Assembly intended the word "repair," as that term is used in Code § 65.2-708(A), to convey its ordinary meaning, and thus that the term means only that the surgery must relate to restoring the condition of the prosthesis itself. We cannot, as Locksmith suggests, presume that the term means anything more - such as a restoration of the physical environment affecting the prosthesis.[1] To do so would be to broaden

---

[1] During oral argument, Locksmith's counsel at first conceded that a "repair" of the prosthesis would not include removal of the surrounding tissue. Nevertheless, in his rebuttal argument, Locksmith's counsel again argued that the commission erred in interpreting the term

- 4 -

the statute by implication, adding language the legislature chose not to include. <u>Brockman</u>, 224 Va. at 397, 297 S.E.2d at 808. For these reasons, we find no error in the commission's determination that the evidence failed to prove Locksmith's June 2002 surgery was required to "repair" her knee prosthesis.

We next consider Locksmith's claim that the commission erred in finding her medical treatment, related to the June 18, 2002 surgery, was unauthorized. Relevant to that contention, Code § 65.2-603 provides as follows, in pertinent part:

> A. 1. As long as necessary after an accident, the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician chosen by the injured employee from a panel of at least three physicians selected by the employer and such other necessary medical attention.
>
> \* \* \* \* \* \* \*
>
> C. If in an emergency or on account of the employer's failure to provide the medical care during the period herein specified, or for other good reasons, a physician other than provided by the employer is called to treat the injured employee, during such period, the reasonable cost of such service shall be paid by the employer if ordered so to do by the Commission.

Thus, an employer's responsibility for medical expenses depends upon "(1) whether the medical service was causally related to the industrial injury; (2) whether such other medical attention was necessary; and (3) whether the treating physician made a referral to the patient." <u>Volvo White Truck Corp. v. Hedge</u>, 1 Va. App. 195, 199, 336 S.E.2d 903, 906 (1985); Code § 65.2-603. Locksmith, as the claimant, bears the burden of proof on these issues. <u>McGregor v. Crystal Food Corp.</u>, 1 Va. App. 507, 508, 339 S.E.2d 917, 918 (1986).

---

"repair" too narrowly, so as not to include removal of tissue from the tibial polyethelene, a portion of Locksmith's prosthesis. Thus, this case involves more than a mere factual issue. Specifically, it requires an analysis of whether the commission properly interpreted and applied the terms of the statute at issue. As stated above, we conclude that it did.

Without a referral from an authorized treating physician, Code § 65.2-603(C) provides for treatment by an unauthorized physician in an "emergency" or "for other good reason." Shenandoah Products, Inc. v. Whitlock, 15 Va. App. 207, 212, 421 S.E.2d 483, 485 (1992). In explaining the "other good reasons" test of Code § 65.2-603(C), we have stated that:

> if the employee, without authorization but in good faith, obtains medical treatment different from that provided by the employer, and it is determined that the treatment provided by the employer was inadequate treatment for the employee's condition and the unauthorized treatment received by the claimant was medically reasonable and necessary treatment, the employer should be responsible, notwithstanding the lack of prior approval by the employer.

Id. at 212, 421 S.E.2d at 486. "Whether the employee acted in good faith is a credibility determination." H. J. Holz & Son, Inc. v. Dumas-Thayer, 37 Va. App. 645, 654, 561 S.E.2d 6, 10 (2002).

Here, Locksmith does not allege that her actions in seeking treatment from the Wisconsin physicians were taken due to an emergency. Further, there was no evidence that the treatment provided by the employer was inadequate because, as the commission found, the employer here was under the impression that Locksmith had been released from care in 1999. See Bass v. City of Richmond Police Dep't, 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999) (noting the commission, as fact finder, "resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions" and when based on credible evidence, the commission's judgments are "'conclusive and binding as to all questions of fact'" (quoting Code § 65.2-706(A))).

As also found by the commission, Locksmith did not maintain contact with either the commission or the employer after her 1999 move to Wisconsin. Indeed, the employer's adjustor testified that she had no record indicating that Locksmith provided the employer's insurance carrier with her new address. The adjustor also testified that Locksmith failed to request a panel

- 6 -

of physicians in Wisconsin until May of 2002 – approximately one year after she had begun extensive treatment with several unapproved Wisconsin physicians and only one month prior to the surgery at issue. Of further significance, at the time Locksmith requested the panel, Dr. Wallskog had already recommended the surgery. After the adjustor informed Locksmith that she needed to locate and review Locksmith's closed file, Locksmith waited several days, but then called the adjustor again and informed the adjustor that she had already scheduled the surgery. Locksmith never indicated that she would postpone the surgery; and, as stated above, no evidence suggested that either party had any reason to believe that the surgery was required for purposes of an emergency.

It is true that "[a]n attending physician selected by an employee becomes the treating physician if the employer fails or refuses to provide a panel of physicians," Southland Corp. v. Welch, 33 Va. App. 633, 637-38, 536 S.E.2d 443, 445 (2000), and that an "employer's denial of liability under the Act is equivalent to a refusal to provide the employee with medical services," Goodyear Tire & Rubber Co. v. Pierce, 9 Va. App. 120, 128, 384 S.E.2d 333, 338 (1989). However, the record here supports the commission's conclusion that Locksmith selected her treating physician and in fact, scheduled her June 18, 2002 knee surgery prior to her employer's ultimate failure and/or refusal to provide Locksmith with a panel of physicians, and prior to its denial of liability for her claim.

We have emphasized that "'[r]eimbursement for unauthorized medical treatment should be the rare exception'" and "'[w]hen an employee seeks treatment other than that provided by the employer or ordered by the commission, he or she does so at his or her own peril and risks not being reimbursed.'" H. J. Holz, 37 Va. App. at 653-54, 561 S.E.2d at 10 (quoting Shenandoah Prods., 15 Va. App. at 213, 421 S.E.2d at 486). Consistent with this principle, we find no error in the commission's determination that Locksmith failed to provide evidence of an

emergency or "other good reason" to justify her failure to allow the employer to provide an approved panel of physicians prior to her selection of her own physician and her decision to proceed with the care advised by those physicians. Accordingly, we find no error in the commission's determination that Locksmith's medical care, as it related to the June 18, 2002 surgery, was unauthorized pursuant to Code § 65.2-703.

Affirmed.

Elder, J., concurring, in part, and dissenting, in part.

I believe the majority construes too narrowly the provisions of Code § 65.2-708(A) dealing with the repair of a prosthesis. Thus, I respectfully dissent from the portion of the majority opinion holding Rebecca L. Locksmith's claim for temporary and permanent disability benefits was time barred.

Code § 65.2-708(A) provides in relevant part as follows:

> Upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded . . . . No such review shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title, except: . . . (ii) twenty-four months from the day that the claimant undergoes any surgical procedure compensable under § 65.2-603 to repair or replace a prosthesis or orthosis.

It is undisputed that Locksmith's claim for benefits based on a change in condition was timely filed if her June 2002 surgery is held to have involved the "repair" of her right knee prosthesis. Locksmith underwent total knee replacement and revision in 1997, when she received a prosthesis with an "all polyethylene patella" and "patella button" and tibial and femoral components.

"While we generally give great weight and deference, on appeal, to the commission's construction of the Workers' Compensation Act, 'we are not bound by the commission's legal analysis in this or prior cases.'" Peacock v. Browning Ferris, Inc., 38 Va. App. 241, 248, 563 S.E.2d 368, 372 (2002) (quoting USAir, Inc. v. Joyce, 27 Va. App. 184, 189 n.1, 497 S.E.2d 904, 906 n.1 (1998)). We review questions of law *de novo*. Sinclair v. Shelter Constr. Corp., 23 Va. App. 154, 156-57, 474 S.E.2d 856, 857-58 (1996). Further, the Act "is highly remedial and should be liberally construed to advance its purpose . . . [of compensating employees] for accidental injuries resulting from the hazards of the employment." Henderson v. Central Tel.

Co., 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987). The majority notes the principle that the commission's interpretation of a term, such as "repair," used in the Workers' Compensation Act is a conclusion of law not binding on this Court, but it fails expressly to note--and, I believe, fails to give appropriate weight to--the principle that the Act is to be construed liberally for the benefit of employees. See id.

Applying these principles, I would hold the term "repair" is broad enough to encompass what the majority describes as "*restoration* of the physical environment affecting the prosthesis." (Emphasis added). Locksmith's treating physician, Dr. Joel Wallskog, opined that her symptoms and need for ongoing treatment and surgery were "directly related to her initial as well as follow-up knee replacement." Wallskog's operative notes indicate Locksmith developed scar tissue that "impinge[d] between the femoral component and the tibial polyethylene," both of which were parts of the prosthesis. Locksmith's surgery involved "remov[al]" of that scar tissue "in its entirety." That surgery also involved the shaving of "tissue from the superior aspect of the patella," another part of the prosthesis. Dr. Wallskog expressed concern that this tissue was "causing some degree of patellar clunk syndrome," interfering with patellar tracking, and he removed that tissue, as well, "in its entirety." The commission expressly found that the tissues Dr. Wallskog removed "were encroaching on the proper functioning of the prosthesis" and that the "surgery was clearly necessary to treat [Locksmith's] painful knee symptoms." Like the dissenting commissioner, I would hold this surgery entailed "repair" of a "prosthesis," as those terms are used in Code § 65.2-708(A).

Thus, I respectfully dissent from the portion of the majority opinion holding Locksmith's claim for temporary and permanent disability benefits was time barred.