COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Beales, and Senior Judge Coleman
Argued at Richmond, Virginia


LYDIA C. HAYES

                                                 MEMORANDUM OPINION[*] BY
v.       Record No. 1600-10-2            JUDGE RANDOLPH A. BEALES
                                                    MARCH 8, 2011

PERREL MANAGEMENT COMPANY, INC. AND
  AMCOMP EMPLOYERS PREFERRED INSURANCE COMPANY


PERREL MANAGEMENT COMPANY, INC. AND
  AMCOMP EMPLOYERS PREFERRED INSURANCE COMPANY


v.       Record No. 1633-10-2


LYDIA C. HAYES


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

      Ruth S. Norrell for Lydia C. Hayes.

      Adam Rafal (Vandeventer Black LLP, on briefs), for Perrel
      Management Company, Inc. and AMCOMP Employers Preferred
      Insurance Company.[1]


      Lydia C. Hayes appeals the decision of the Virginia Workers' Compensation

Commission (commission) to terminate her award of total temporary disability compensation

(Record No. 1600-10-2).  Her employer[2] appeals the commission's decision authorizing Hayes a

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Perrel Management Company, Inc. and AMCOMP Employers Preferred Insurance
Company did not participate during the oral argument pertaining to Record No. 1600-10-2, but
instead relied on the brief filed in this Court.

        [2] We use the term "employer" to include both the employer, Perrel Management
Company, Inc. and its insurer, AMCOMP Employers Preferred Insurance Company.

new treating physician for compensable medical treatment (Record No. 1633-10-2). For the following reasons, we affirm the commission's decision in both cases.

## I. BACKGROUND

On June 19, 2007, Hayes suffered a tear in the posterior tibial tendon of her right foot while performing her duties as a housekeeping supervisor for employer. Employer agreed that this injury was compensable. Hayes was awarded temporary total disability compensation and lifetime medical benefits for treatment relating to this injury.

Dr. Joseph Bava of Atlantic Foot & Ankle Center (Atlantic) surgically repaired Hayes's posterior tibial tendon on August 13, 2007. Hayes's treatment with Atlantic continued through September 2008 – first under Dr. Bava, who left the Atlantic practice in July 2008, and then under Dr. Michael Rayno. Dr. Bava's notes reflect continued improvement in Hayes's posterior tibial tendon following the surgery, although Dr. Bava still treated Hayes for pain related to this injury.

On July 16, 2008, Dr. Bava noted for the first time that Hayes felt "marked pain along the outer side of the right foot" near the peroneal tendon, and he ordered an MRI "to assess the lateral aspect" of that foot. After reviewing the MRI report and evaluating Hayes on July 31, 2008, Dr. Rayno confirmed that Hayes's peroneal tendon was partially torn. Although he could not identify a specific cause of this injury, Dr. Rayno did not believe that the tear to the peroneal tendon resulted from Hayes's physical therapy for the posterior tibial tendon injury. Dr. Rayno noted that there was no swelling "on her right medial foot where she has had the previous repair of her tibialis posterior tendon."

On September 4, 2008, Dr. Rayno concluded that Hayes would "most likely" need surgery to repair her peroneal tendon. However, employer denied coverage for surgery to Hayes's peroneal tendon, asserting that this procedure was not related to her compensable injury

to the posterior tibial tendon. According to Hayes, employer also denied coverage for any further treatment by Dr. Rayno. Therefore, she scheduled no further appointments with Dr. Rayno or any other physician at Atlantic.

Dr. Steven Blasdell, an independent medical examiner, concluded that Hayes's injury to her peroneal tendon was unrelated to the posterior tibial tendon injury. Dr. Blasdell concluded that Hayes had reached maximum medical improvement with respect to her posterior tibial tendon injury and that no further treatment was necessary for that injury.

Dr. Rayno agreed with Dr. Blasdell's conclusions in a January 2, 2009 letter to employer's counsel. Dr. Rayno found no "clear indication that the current problem, which is the peroneal tendon injury[,] has any relation to the initial injury of June 2007," which was to the posterior tibial tendon. Dr. Rayno also stated that Hayes "did actually at some point reach maximum medical improvement in regards to the posterior tibial injury, which was the original injury in question."

Dr. Rayno reiterated these opinions in a June 3, 2009 response to a questionnaire from employer. Dr. Rayno responded affirmatively when asked whether Hayes was "able to return to full, unrestricted duty with respect to her posterior tibial tendon injury."

Without employer's approval, Hayes sought a second opinion from Dr. Alexandra Dale. Dr. Dale concluded that Hayes had "[c]ontinued pain status post a posterior tibial tendon tear from a work related injury in 2007." Dr. Dale did not express any opinion on whether Hayes remained disabled by this injury.

Hayes and employer both filed applications for relief in the commission.[3] Following a hearing, a deputy commissioner found that Hayes was no longer eligible for temporary total disability compensation based on Dr. Rayno's opinion that Hayes was cleared for "full, unrestricted duty" with respect to her compensable posterior tibial tendon injury. In addition, the deputy commissioner found that Hayes was authorized to receive treatment from Dr. Dale for any ongoing pain related to her compensable injury.

On review, the commission affirmed the deputy commissioner's finding that Hayes was not entitled to further temporary total disability compensation. The commission credited Dr. Rayno's opinion that Hayes's peroneal tendon injury was unrelated to her compensable posterior tibial tendon injury, explaining, "Although Dr. Rayno had not seen the claimant since September 2008 when he answered the June 2009 questionnaire, his opinion about causation of the peroneal tendon injury was consistent beginning in July 2008." Moreover, the commission credited Dr. Rayno's opinion that Hayes's posterior tibial tendon had reached maximum medical improvement and that she was released for "full, unrestricted duty" with respect to this injury.

A majority of the commission, with one commissioner dissenting, also affirmed the deputy commissioner's finding that Hayes was authorized to see Dr. Dale for continued medical treatment related to her compensable posterior tibial tendon injury. Although it had relied on Dr. Rayno's opinion that Hayes's posterior tibial tendon had reached maximum medical improvement, the commission noted that this finding "does not equate to a statement that no further treatment of any kind is necessary for the ongoing pain symptoms" related to her compensable injury. The commission credited Dr. Dale's opinion that Hayes still experienced

---

[3] Hayes sought "continued medical benefits and an order recognizing Dr. Dale as her new treating physician." Employer sought "to terminate the award of compensation for temporary total disability on the grounds that the claimant had been released to return to her pre-injury work by Dr. Rayno as of June 3, 2009."

ongoing pain related to this injury. The commission found that Hayes "has shown that she reasonably believed that the insurer was denying all care" from Dr. Rayno, and, therefore, it found that she was authorized to seek medical treatment for pain related to her compensable posterior tibial tendon injury from Dr. Dale.

## II. ANALYSIS

On appeal from the commission, this Court reviews the facts in the light most favorable to the party prevailing in the commission. Apple Constr. Corp. v. Sexton, 44 Va. App. 458, 460, 605 S.E.2d 351, 352 (2004). "[W]e must defer to the commission's findings of fact if supported by credible evidence in the record." Diaz v. Wilderness Resort Ass'n, 56 Va. App. 104, 114, 691 S.E.2d 517, 522 (2010). "'In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.'" Pruden v. Plasser Am. Corp., 45 Va. App. 566, 574-75, 612 S.E.2d 738, 742 (2005) (quoting Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

### A. TEMPORARY TOTAL DISABILITY (RECORD NO. 1600-10-2)

Hayes argues that the commission erred when it found that she was no longer entitled to temporary total disability compensation. Although Hayes raises three separate assignments of error, these assignments of error all relate to whether the commission was plainly wrong when it found that the injury to her peroneal tendon was not causally related to the compensable injury to her posterior tibial tendon that occurred on June 19, 2007.

The commission's "determination regarding causation is a finding of fact," Farmington Country Club v. Marshall, 47 Va. App. 15, 26, 622 S.E.2d 233, 239 (2005), which is binding on this Court if supported by credible evidence in the record below, see Wagner Enters., 12 Va. App. at 894, 407 S.E.2d at 35. In this case, the commission relied on Dr. Rayno's opinion that the

injury to Hayes's peroneal tendon was not related to the compensable injury to her posterior tibial tendon. Hayes contends that the commission should not have relied on Dr. Rayno's opinion because he last treated Hayes in September 2008 – more than a year prior to the evidentiary hearing before the deputy commissioner. Hayes also suggests that Dr. Rayno's opinion was not credible because he allegedly "changed his opinion" on causation after employer decided not to cover the surgery to repair her peroneal tendon.

"[T]he probative weight to be accorded [medical] evidence is for the Commission to decide" in its role as factfinder, and if a portion of the medical evidence "is in conflict with other medical evidence, the Commission is free to adopt that view which is most consistent with reason and justice." Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 269 (2000). As the commission noted, Dr. Rayno examined Hayes's compensable posterior tibial tendon injury and her subsequent peroneal tendon injury in his capacity as Hayes's treating physician. See Bassett Burkeville Veneer v. Slaughter, 21 Va. App. 575, 580, 466 S.E.2d 127, 129 (1996) (explaining that "great weight should be given to the evidence of an attending physician"). In Dr. Rayno's opinion, the peroneal tendon injury was not related to the posterior tibial tendon injury. The commission specifically rejected Hayes's suggestion that Dr. Rayno "changed his opinion" on this issue after employer denied coverage for the peroneal tendon surgery – noting that Dr. Rayno's opinion has been consistent since July 30, 2008, which was *before* Dr. Rayno thought surgery on the peroneal tendon was even necessary. In addition, Dr. Rayno's opinion was corroborated by Dr. Blasdell's findings. Based on this record, the commission was certainly entitled to rely upon Dr. Rayno's opinion that the peroneal tendon injury was not related to the compensable posterior tibial tendon injury.[4]

---

[4] To the extent that the notes of Dr. Dale's examination of Hayes support the opposite conclusion, the commission was not plainly wrong in declining to rely on those notes. Dr. Dale noted that Hayes complained of lateral ankle pain, which "was felt to be due to peroneal

- 6 -

Similarly, the commission was entitled to rely on Dr. Rayno's opinion that Hayes's compensable posterior tibial tendon injury had reached maximum medical improvement and that she was cleared for "full, unrestricted duty" with respect to that injury. This opinion was also corroborated by Dr. Blasdell. Therefore, the commission did not err when it found that employer established that temporary total disability benefits were no longer warranted based on Dr. Rayno's opinion that Hayes was able to return to "full, unrestricted duty" with respect to her compensable posterior tibial tendon injury. See Crystal Oil Co. v. Dotson, 12 Va. App. 1014, 1021, 408 S.E.2d 252, 256 (1991).

Accordingly, we affirm the commission's decision to terminate the award of temporary total disability benefits related to Hayes's posterior tibial tendon injury.

### B. AUTHORIZED TREATING PHYSICIAN (RECORD NO. 1633-10-2)

Employer argues that the commission erred when it authorized Hayes to receive treatment from Dr. Dale as her new treating physician. We emphasize that the commission's decision on this issue concerned *only* "the ongoing pain symptoms that involve the parts of the claimant's foot injured in the June 19, 2007 accident." Moreover, as we explained *supra*, the commission was not plainly wrong in concluding that the partial tear of Hayes's peroneal tendon was unrelated to the compensable injury to her posterior tibial tendon. Thus, we consider here *only* the medical attention necessary to treat ongoing pain related to Hayes's compensable injury to her posterior tibial tendon.

---

tendinitis, and surgery on the peroneal tendons was recommended. *The patient relates that she has had pain on the lateral side since immediately after surgery that has increased over time.*" (Emphasis added). This notation by Dr. Dale is contradicted by the notes of Dr. Bava, who performed the surgery to repair Hayes's posterior tibial tendon surgery in August 2007 and continued treating Hayes until July 2008. According to Dr. Bava's notes, Hayes first complained of pain on the lateral side of her right foot, which would indicate an injury to her peroneal tendon, in July 2008 – eleven months after the surgery on her posterior tibial tendon.

An employer "shall furnish or cause to be furnished" the "necessary medical attention" to treat its employee's compensable injury. Code § 65.2-603(A)(1); see H.J. Holz & Son, Inc. v. Dumas-Thayer, 37 Va. App. 645, 561 S.E.2d 6 (2001).[5] Code § 65.2-603 further provides:

> If in an emergency or on account of the employer's failure to provide the medical care during the period herein specified, or for other good reasons, a physician other than provided by the employer is called to treat the injured employee, during such period, the reasonable cost of such service shall be paid by the employer if ordered so to do by the Commission.

Code § 65.2-603(C). Under this statute, if an employee, "without authorization but in good faith," obtains medical treatment from a different physician than the one provided by the employer, the employer is responsible to pay for this treatment if "it is determined that the treatment provided by the employer was inadequate treatment for the employee's condition and the unauthorized treatment received by the claimant was medically reasonable and necessary treatment." Shenandoah Prods., Inc. v. Whitlock, 15 Va. App. 207, 212, 421 S.E.2d 483, 486 (1992); see also Apple Constr. Corp., 44 Va. App. at 461, 605 S.E.2d at 352 (listing circumstances when the commission may order a change in treating physicians, including when "inadequate treatment is being rendered").

Here, Hayes testified at the evidentiary hearing that employer not only refused to cover the surgery to repair her peroneal tendon, but also told her that it would not even pay for her to see Dr. Rayno. This unrebutted testimony was sufficient to establish that employer would not

---

[5] This Court, "in keeping with prior decisions of the commission," has held that "'necessary medical attention' as that phrase is used in Code § 65.2-603(A)(1) includes palliative treatment" for "credible . . . complaints of continuing pain." H.J. Holz & Son, Inc., 37 Va. App. at 655 & 657, 561 S.E.2d at 11 & 12 (citing Davis v. Old Oak Mining, 76 OWC 113 (1997)); see also Thomas v. Billy Thomas Heating and Air, VWC File No. 206-41-68 (Nov. 9, 2009) ("The claimant is entitled to medical care to alleviate painful symptoms, even if the treatment is not curative."). Therefore, as the commission noted in this case, Dr. Rayno's opinion that Hayes's posterior tibial tendon had reached maximum medical improvement "does not equate to a statement that no further treatment of any kind is necessary for the ongoing pain symptoms that involve the parts of the claimant's foot injured in the June 19, 2007 accident."

authorize any further treatment under Dr. Rayno – including treatment for any continuing pain related to her compensable posterior tibial tendon injury. Thus, the commission's finding that Hayes "reasonably believed that the insurer was denying *all* care" under Dr. Rayno was supported by the record.

In addition, the commission found that Hayes felt continuing pain related to her compensable posterior tibial tendon injury. Viewing the relevant evidence in the light most favorable to Hayes, as we must, since she was the prevailing party in the commission on this issue, see Apple Constr. Corp., 44 Va. App. at 460, 605 S.E.2d at 352, the commission's factual finding here was supported by credible evidence. As the commission noted, Dr. Dale had examined Hayes more recently than Dr. Rayno, and Dr. Dale reported that Hayes suffered continuing pain related to the posterior tibial tendon injury. The commission credited Dr. Dale's opinion on this issue, as it was entitled to do as the factfinder.[6] See Georgia-Pacific Corp., 32 Va. App. at 5, 526 S.E.2d at 269.

Therefore, credible evidence supported the commission's finding that Hayes felt continuing pain related to her compensable posterior tibial tendon injury, but that employer had refused to cover all further treatment under Dr. Rayno – including treatment to alleviate pain that was related to her compensable injury to the posterior tibial tendon. However, the commission also found that, at that point, Hayes "has now established a course of treatment with Dr. Dale." Given these circumstances, employer's decision not to cover any further treatment from Dr. Rayno constituted inadequate treatment of Hayes's continuing pain related to her

---

[6] We note that Dr. Dale's examination of Hayes focused on the subtalar joint – which Dr. Bava had reported was a source of pain for Hayes months before pain associated with the peroneal tendon was detected by Dr. Bava. During her March 2009 examination of Hayes, Dr. Dale "recommended another diagnostic injection in the subtalar joint, as the last one was performed almost a year ago" by Dr. Bava. There is no indication in the commission record that employer had refused to cover this injection by Dr. Bava or had claimed that this treatment was unrelated to the compensable posterior tibial tendon injury.

- 9 -

compensable posterior tibial tendon injury, and Dr. Dale's alternative course of treatment to alleviate this pain, therefore, was "reasonable and necessary." H.J. Holz & Sons, Inc., 37 Va. App. at 655, 651 S.E.2d at 11.

Accordingly, we conclude, under the specific facts of this case, that the commission did not err when it authorized Dr. Dale to treat Hayes's continuing pain related to her compensable posterior tibial tendon injury.

### III. CONCLUSION

Credible evidence supported the commission's finding that Hayes's peroneal tendon injury was not related to her compensable posterior tibial tendon injury, and the commission did not err when it terminated temporary total disability benefits based on Dr. Rayno's opinion that Hayes could return to "full, unrestricted duty" with respect to the compensable injury to her posterior tibial tendon. In addition, the commission did not err when it authorized Dr. Dale to treat Hayes's continuing pain related to this compensable injury, given that employer had denied coverage for any further treatment under Hayes's previous treating physician, Dr. Rayno. Accordingly, for the foregoing reasons, we affirm the commission's order in each of these cases.

Affirmed.