COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, O'Brien and Malveaux
Argued at Richmond, Virginia


MILLER OIL COMPANY AND
  OLD REPUBLIC INSURANCE CO.

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1649-15-1                        JUDGE MARY GRACE O'BRIEN
                                                    AUGUST 2, 2016

CATHERINE FREEMAN


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Adam S. Rafal (Lisa Thatch; Vandeventer Black, LLP, on briefs), for
            appellants.

            John H. Klein (Montagna Klein, Camden LLP, on brief), for
            appellee.


        Miller Oil Company ("the employer") appeals the decision of the Workers' Compensation

Commission ("the Commission") authorizing Catherine Freeman ("claimant") to change her

treating physician.  Finding no error, we affirm the Commission's ruling.

                                    ASSIGNMENTS OF ERROR

        Appellants assert two assignments of error:

            1.  The Commission erred in affirming the [d]eputy
                [c]ommissioner's authorization for a change in treating physician
                to Dr. Wardell.

            2.  The Commission erred in affirming the [d]eputy
                [c]ommissioner's failure to consider or address issues of
                causation and whether the disputed treatment is necessary and
                related to the [claimant's] industrial accident.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On May 24, 2013, claimant tripped on an empty crate and injured her right knee while working as a sales associate at a gas station. She filed a claim for benefits on June 1, 2013, and the employer stipulated that the injury was compensable and agreed to a medical award. Claimant chose Dr. N. Michael Baddar as her treating physician from a panel of physicians provided by the employer.[1] Claimant began treatment with Dr. Baddar on May 28, 2013, and he released her from his care on January 21, 2014, opining that "[t]he condition is resolved, and the patient is at maximum medical improvement (MMI) with no residual disability."

Claimant, however, asserted that she was still experiencing pain. She requested that the employer provide her with a panel of orthopedic specialists to choose from for further treatment of her knee. The employer contested claimant's request to change her treating physician and requested a hearing before a deputy commissioner.

At the hearing, claimant testified that Dr. Baddar gave her "probably three different kinds" of medication but none was successful in alleviating her pain. She stated that Dr. Baddar informed her that he did not see anything wrong with her knee and that he "just told [her] to do the exercises and that's all basically he could do." The medical evidence showed that claimant was prescribed medications by Dr. Baddar and given steroid injections. Due to continued pain, Dr. Baddar ordered an MRI which was mostly normal "with the exception of a very small joint effusion."

Despite the fact that the insurance company told claimant that she could not change her doctor, she independently began treatment with Dr. Arthur E. Wardell in November 2014. She also requested that the employer allow her to change her treating physician. Dr. Wardell, an orthopedic surgeon, reviewed claimant's medical record from Dr. Baddar and performed an evaluation. He found that there was "[p]robable articular cartilage fracture of the medial femoral condyle as a result

---

[1] Dr. Baddar practices occupational and preventive medicine.

of direct impact." He recommended an arthroscopy of the right knee and noted that it was "very common" for an MRI "not to image this type of articular cartilage damage." Dr. Baddar disagreed with Dr. Wardell's conclusions.

The employer had another orthopedic specialist, Dr. Sheldon Cohn, examine claimant. Following an examination and a review of claimant's medical records, Dr. Cohn concluded that claimant did not "have an intraarticular injury to her knee," and he recommended against arthroscopic intervention. He opined that claimant may have a nerve injury that was causing neurogenic symptoms, and he recommended that she be evaluated by a neurologist. Dr. Wardell disagreed with Dr. Cohn's opinion that claimant did not have an intraarticular pathology. Dr. Wardell stated that during his examination of claimant's knee, he heard a "loud click" which indicated intraarticular pathology, and he further noted that "more often than not . . . intraarticular cartilage fractures of the medial femoral condyle are not visible on MRI's."

Pursuant to Dr. Cohn's recommendation, claimant was evaluated by Dr. Donald LeMarche, a neurologist. Dr. LeMarche had "no neurological explanation" for claimant's symptoms, and he suggested no further neurological workup.

At the hearing, the deputy commissioner heard testimony from claimant and reviewed the medical records and evaluations. The commissioner concluded that claimant's testimony that "she has consistently experienced pain" in her knee was credible. He found that "[c]laimant has proven there has been a lack of improvement of her health condition" and that because Drs. Baddar, Cohn, and LeMarche have either released claimant from their care or are not providing her ongoing treatment, "Dr. Wardell is the only physician of record who is continuing to offer a course of treatment aimed at addressing [c]laimant's ongoing pain." Accordingly, pursuant to Code

§ 65.2-603, the commissioner entered an award in favor of claimant for payment of medical benefits, including treatment provided and recommended by Dr. Wardell, for as long as necessary.[2]

The employer requested review by the full Commission, which affirmed the deputy commissioner's opinion. While recognizing that there was a difference of opinion among the doctors, the Commission determined that claimant's evidence that she continued to suffer pain was credible. Therefore, the Commission found no error in the deputy commissioner's award granting claimant's request for a change in her treating physician.

ANALYSIS

A. Standard of Review

On appeal, we review the evidence in the light most favorable to the claimant, the party who prevailed before the Commission. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). This Court is bound by the Commission's findings of fact "if [the] findings are supported by credible evidence in the record, regardless of whether contrary evidence exists or contrary inferences may be drawn." Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 131, 510 S.E.2d 255, 261 (1999) (*en banc*). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Id.

B. Assignment of Error I: Change in Treating Physician

The Workers' Compensation Act affords an injured employee the right to select a treating physician from an employer-provided panel of at least three doctors. Code § 65.2-603(A)(1). Once

---

[2] The commissioner ordered that the employer would not be responsible for the costs of care provided to claimant by Dr. Wardell prior to the award being entered because the change in treating physician had not yet been authorized.

a selection is made, the claimant may change treating physicians only with the approval of the employer or the Commission. See Goodyear Tire & Rubber Co. v. Pierce, 9 Va. App. 120, 128, 384 S.E.2d 333, 337-38 (1989). "To justify a change in the treating physician, the [party seeking the change] bears the burden of proving that specific circumstances warrant the change." Apple Constr. Corp. v. Sexton, 44 Va. App. 458, 461, 605 S.E.2d 351, 352 (2004). In the present case, the employer asserts that the claimant did not meet her burden to show that the circumstances warranted a change in treating physician, and therefore, the Commission erred in affirming the deputy commissioner's authorization of a change in claimant's treating physician from Dr. Baddar to Dr. Wardell. We disagree.

The Commission has previously enumerated several reasons for which it will order a change in treating physician, and this Court has recognized these factors:

1. Inadequate treatment is being rendered;
2. It appears that treatment is needed by a specialist in a particular field and is not being provided;
3. No progress being made in improvement of the employee's health condition without any adequate explanation;
4. Conventional modalities of treatment are not being used;
5. No plan of treatment for long-term disability cases; and
6. Failure [of the doctor] to cooperate with discovery proceedings ordered by the Commission.

Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 675, 508 S.E.2d 335, 341 (1998). See also Apple Constr. Corp., 44 Va. App. at 461, 605 S.E.2d at 352.

Here, the Commission relied on some of the above factors in making its decision that claimant had met her burden of showing that a change in physicians was warranted. In addition to acknowledging that claimant's continued complaints of pain were credible, the Commission noted that "Dr. Baddar twice concluded that the claimant's condition had resolved and released her from his care." The Commission further recognized that Dr. Wardell gave claimant a "differing diagnosis and a plan of treatment." There is credible evidence to support the Commission's

findings that inadequate treatment was being rendered, treatment was needed by a specialist in a particular field and was not being provided, and there was an unexplained lack of progress in the improvement of claimant's health condition.

In H.J. Holz & Son v. Dumas-Thayer, 37 Va. App. 645, 657-58, 561 S.E.2d 6, 12 (2002), this Court affirmed the Commission's decision to allow a change in treating physician from an orthopedic surgeon to a chiropractor when a claimant remained in pain, with no improvement in her medical condition. The Commission based its decision on the fact that while the orthopedic surgeon provided adequate pharmacological treatment, the treatment was nonetheless inadequate because it did not alleviate claimant's complaints of pain and no improvement was being made in claimant's condition, nor was there an explanation for the lack of improvement. Id.

Likewise, in the case before us, claimant reported persistent, severe pain and moderate burning in her right knee, despite Dr. Baddar's treatment. When Dr. Baddar released claimant from treatment, he concluded that her condition had resolved and she had reached maximum medical improvement with no residual disability. Because the MRI was "essentially normal," he did not see any need for surgical intervention.

Dr. Wardell, however, reached a different conclusion from both Dr. Baddar and Dr. Cohn. Dr. Wardell explained that even though the MRI did not reflect an image of an intraarticular cartilage fracture, this was not dispositive to his diagnosis. He attached medical significance to the "loud click" he heard during his examination of claimant's knee. Dr. Wardell, unlike Dr. Baddar, is a board-certified orthopedic specialist. We find that the Commission did not err by resolving the differences in opinion in claimant's favor. Evidence in the record supports the Commission's finding, and we will not disturb it on appeal.

C.  Assignment of Error II:  Failure to Address Causation and Necessity of Treatment

The employer asserts that the Commission erred by failing to address the employer's contention that Dr. Wardell's treatment is not medically necessary or causally related to claimant's injury.  The employer's argument is based on the contention that "the weight of the medical evidence . . . supports a finding that [claimant] does not require additional medical treatment causally related to her industrial injury."  However, reweighing the evidence is not within the province of this Court.  Our inquiry is limited to determining whether credible evidence exists to support the Commission's determination.  Wagner Enterprises, 12 Va. App. at 894, 407 S.E.2d at 35.  "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding."  Id.

Dr. Wardell's testimony, taken in conjunction with claimant's testimony about her continuing pain, which the Commission specifically found to be credible, is sufficient to support the Commission's determination that claimant suffered a work-related injury and treatment of that injury necessitated a change in medical provider.  Accordingly, we affirm.

Affirmed.