COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judge Alston and Senior Judge Frank
Argued by teleconference

ROSE E. YAHNER

OPINION BY
v.          Record No. 1650-18-1          CHIEF JUDGE MARLA GRAFF DECKER
APRIL 30, 2019

FIRE-X CORPORATION AND
  COMMONWEALTH CONTRACTORS GROUP
  SELF-INSURANCE ASSOCIATION

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Raymond L. Hogge, Jr. (Hogge Law, on brief), for appellant.

J. Brian Slaughter (Taylor Walker, P.C., on brief), for appellees.

Rose Yahner (the claimant) appeals the decision of the Workers' Compensation

Commission denying her request for a change in treating physician and her claim for medical

benefits for unauthorized treatment.  For the following reasons, we conclude that the

Commission did not err in determining that the claimant failed to demonstrate either that

circumstances warranted a change in her treating physician or that she was justified in seeking

unauthorized medical treatment.  Consequently, we affirm the Commission's decision.

I.  BACKGROUND[1]

On May 13, 2016, the claimant worked as a sales associate for Fire-X Corporation (the

employer) selling fire suppression products.  That day, the claimant injured her lower back while

moving a fire extinguisher in the course of performing her job duties.

_____

[1] On appeals from the Commission, we view the evidence in the light most favorable to
the prevailing party before the Commission, in this case, the employer.  See Apple Constr. Corp.
v. Sexton, 44 Va. App. 458, 460 (2004).

The claimant received an award of lifetime medical benefits.[2] Subsequently, she sought a change in her treating physician to Dr. Arthur Wardell and medical benefits covering the treatment provided by him. The employer defended on the grounds that Dr. Richard Guinand was her authorized treating physician and that Wardell's treatment was unauthorized, unreasonable, and unnecessary. At the evidentiary hearing, the deputy commissioner considered evidence concerning the claimant's medical condition and treatment.

Regarding the treatment that was furnished through the employer, the evidence showed that after the claimant's injury, the employer presented her with a panel of physicians from which to choose. The claimant chose a physician from the panel, but after her initial appointment with him, she asked the employer for a different doctor. The employer allowed the claimant to choose another physician from the panel of ten options. The claimant then chose Dr. Guinand, a spine specialist, as her treating physician.

Dr. Guinand diagnosed lumbar radiculopathy as well as sprains and strains of the sacroiliac region of her back. He authorized physical therapy and prescribed muscle relaxers, an anti-inflammatory, and pain medication. In addition, Dr. Guinand discussed injection treatment with the claimant, but she declined to consider it as an option. Dr. Guinand cleared the claimant for light duty in June 2016.

The claimant's August 2016 MRI scan reflected no disc herniation or stenosis. Dr. Guinand discussed the claimant's "normal MRI" with her and noted that "a reasonable amount of time and treatment has been provided." However, the claimant reported continuing pain. Guinand ordered a functional capacity evaluation (FCE) and allowed her to continue physical therapy "in the interim."

---

[2] This award is not before us on appeal.

The claimant's FCE was conducted by a physical therapist and orthopedic clinical specialist. During the FCE, the evaluator believed that the claimant did not sufficiently physically exert herself for purposes of the test. He questioned "the reliability and accuracy of [her] reports of pain and disability." The evaluator ultimately concluded that the claimant was able to return to full duty work.

Dr. Guinand reviewed the FCE report and made his own independent conclusions, agreeing with the evaluator's "findings." At that time, the claimant had undergone thirty-seven physical therapy sessions. Dr. Guinand concluded that although the claimant had recovered 40% from her injury, she was no longer "making significant progress." He again offered sacroiliac injection treatment, and the claimant again declined. Dr. Guinand believed that she had reached the maximum improvement possible without injections. He discharged the claimant from physical therapy and approved her to return to work without restrictions.

The claimant testified at the hearing before the deputy commissioner. She explained that the physical therapy ordered under Guinand "helped a little bit." Although Dr. Guinand also offered injection treatment, the claimant declined because she did not "like needles." The claimant testified that Guinand "said he couldn't find anything wrong," "stopped all therapy," and told her to "go to [her] primary doctor" "if [she] needed to see a doctor." However, the claimant also acknowledged that Guinand did not "give [her] a referral" to her primary care physician.

Nevertheless, the claimant went to her primary care doctor, who in turn referred her to an orthopedist, Dr. Wardell. He disagreed with the interpretation of the claimant's August 2016 MRI as "normal." Wardell diagnosed the claimant with bilateral radiculopathy and lumbar facet joint damage and placed her on restricted duty. According to the claimant, Wardell ordered a different type of physical therapy that in her estimation was significantly more effective than the

physical therapy she had previously received. Her further improvement was around 30%. In addition to physical therapy, Dr. Wardell prescribed nerve medication, an anti-inflammatory, and a pain reliever. He also discussed injections with the claimant, but she did not pursue that course of treatment. Wardell opined that Guinand's treatment of the claimant "was adequate until discharge" but that he should not have discharged her.

At the employer's direction, the claimant returned to Dr. Guinand for a single appointment. He reviewed Dr. Wardell's notes and opined that Wardell's findings and treatment were similar to his and that the claimant's "complaints" and responses were also similar. Dr. Guinand again concluded that "[u]ntil [the claimant] wishe[d] to proceed with injections [he] ha[d] nothing further to offer her."

Stephanie Lloyd, the nurse case manager assigned to the claimant, accompanied her to most of her appointments with Dr. Guinand. Lloyd explained that Guinand ultimately did not schedule an additional follow-up appointment with the claimant because she "refuse[d] the injections" and "there was not another appointment timeframe recommended at the time of the last appointment." She clarified that if the claimant wanted injection treatment, "another appointment would have been established."

After hearing the case, the deputy commissioner found that Dr. Guinand's care was adequate. Consequently, the deputy commissioner concluded that the claimant failed to prove that the circumstances warranted a change of treating physician from Dr. Guinand to Dr. Wardell and held that the employer was not financially responsible for the unauthorized treatment that the claimant received from Wardell.

The claimant requested review by the Commission. The Commission unanimously affirmed the opinion of the deputy commissioner. It found that Dr. Guinand provided her with adequate care. In addition, the Commission found that Dr. Guinand did not discharge the

claimant from his care or refer her to her primary care physician for treatment of her ongoing injury. It found that the claimant had established merely a "disagreement with a treatment regimen." Based on these findings, the Commission concluded that the circumstances did not warrant a change in the treating physician and denied her claim for medical benefits for the unauthorized treatment obtained from Wardell.

## II. ANALYSIS

The claimant appeals the Commission's denial of her claim. As the appellant in this case, she bears the "burden of showing" that the Commission committed reversible error. See Burke v. Catawba Hosp., 59 Va. App. 828, 838 (2012). Further, this Court defers to the Commission in its role as fact finder. Vital Link, Inc. v. Hope, 69 Va. App. 43, 53 (2018). A factual finding by the Commission is "conclusive and binding" as long as evidence in the record supports it. See Jeffreys v. Uninsured Emp'r's Fund, __ Va. __, __ (Feb. 14, 2019) (quoting Code § 65.2-706(A)). This principle applies "even [if] there is evidence in the record to support contrary findings." Id. at __ (quoting Caskey v. Dan River Mills, Inc., 225 Va. 405, 411 (1983)). In short, "[i]f there is evidence or [a] reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by [the] Court on appeal." Id. at __ (quoting Caskey, 225 Va. at 411). It is well established that the appellate court does not "retry the facts," reweigh the evidence, or make its own determination of the "credibility of [the] witnesses." Id. at __ (quoting Caskey, 225 Va. at 411).

Here, the claimant argues that the Commission erred by refusing to allow her to change the treating physician to Dr. Wardell and by declining to order payment of the treatment provided by him. We disagree and affirm for the reasons that follow.

A.  Treating Physician

Whether a party has established that the circumstances warrant a change in the treating physician presents a mixed question of law and fact.  See Food Lion, LLC v. Wright, 53 Va. App. 23, 26-27 (2008); Apple Constr. Corp. v. Sexton, 44 Va. App. 458, 461-62 (2004).  As with all such mixed questions, we review the factual findings underpinning the Commission's legal conclusions with great deference.  See Jeffreys, __ Va. at __; H.J. Holz & Son, Inc. v. Dumas-Thayer, 37 Va. App. 645, 652, 657 (2002).  The party seeking the change in treating physician bears the burden of presenting facts to the Commission sufficient to support the change.  See Food Lion, 53 Va. App. at 26-27; Apple Constr., 44 Va. App. at 461-62.

When an employer must provide medical care for a compensable injury suffered by an employee, it is required to present the employee with a "panel of at least three physicians selected by the employer" from which the employee can choose the treating physician.  Code § 65.2-603(A).  Once "an employee enters into a course of treatment with a physician," he or she cannot change from that doctor unless referred by that specific physician, "confronted with an emergency," or "given permission by the employer," its insurer, or the Commission.  Food Lion, 53 Va. App. at 26 (quoting Goodyear Tire & Rubber Co. v. Pierce, 9 Va. App. 120, 128 (1989)).  Circumstances that may warrant a change in treating physician include if the physician is rendering "inadequate treatment," the injury requires "a specialist in a particular field and [one] is not being provided," the employee's health is not improving "without any adequate explanation," "conventional modalities of treatment are not being used," or there is "no plan of treatment for long-term disability cases."  Apple Constr., 44 Va. App. at 461 (quoting Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 675 (1998)).

In this case, the employer provided the claimant with a panel of ten physicians and medical practices from which she could choose her treating physician, several more options than

- 6 -

required by Code § 65.2-603. She selected a doctor, but after one appointment, she wanted to change physicians. The employer authorized the change, and the claimant then picked Dr. Guinand, also from the panel. Dr. Guinand, a spine specialist, treated the claimant's back injury with a course of prescribed medications and physical therapy. The claimant's injury improved significantly under Guinand's care, but ultimately her progress with him plateaued. He repeatedly recommended sacroliac injection treatment, but the claimant rejected it because she did not "like needles." Ultimately, Dr. Guinand discharged the claimant from physical therapy and concluded that injections remained the only feasible treatment option left.

This record supports the Commission's conclusion that the claimant did not demonstrate circumstances warranting a change in her treating physician. Dr. Guinand was a specialist in the particular field relevant to the claimant's injury. His recommended physical therapy and prescribed medication regimens significantly improved her recovery from the injury. Although the improvement reached a plateau, Guinand continued to recommend injections, which the claimant declined. See generally Dan River, Inc. v. Turner, 3 Va. App. 592, 597-98 (1987) (affirming an award of benefits for additional medical attention where the treating physician released the employee from care for the work injury and the employee had followed the treatment plan of his treating physician). Her dislike of needles simply is not a circumstance that required the Commission to conclude that she was entitled to a change in her treating physician.

The claimant relies on her interpretation of the record to argue that Dr. Guinand refused to provide adequate care, discharged her, and referred her to her primary care physician. It is true that the treating physician's discharge of an employee as a patient is a relevant circumstance in determining the adequacy of care being provided. See generally discharge, Taber's Cyclopedic Medical Dictionary (23d ed. 2017) (defining "discharge," in pertinent part, as "to officially release from care"). However, whether a treating physician has discharged a patient "is

- 7 -

a factual determination which must be proven by clear and convincing evidence in light of the high professional responsibility" expected of a medical doctor "to provide patient care and treatment." See Jenson Press v. Ale, 1 Va. App. 153, 157 (1985). This factual question "most often is determined by the express intent of the physician" but may sometimes "require analysis of the total circumstances." Id.

We disagree with the claimant's arguments because she does not present the record in the light most favorable to the employer. The Commission's findings that Dr. Guinand did not discharge the claimant from his care or refer her to her primary care physician to treat her injury are supported by credible evidence in the record. See id. (affirming a finding that the treating physician did not release the patient from care). Although the claimant testified that Guinand said that he could do nothing more for her and told her to see her primary care physician, the doctor's records do not indicate any type of referral to another physician for treatment of the claimant's back injury. Nor do the records from Dr. Guinand show that he discharged her from his care. Instead, the medical records show that he continued to recommend injections as the only remaining treatment option and did not schedule further follow up appointments with her due to her refusal to consider them. The only "discharge" involved his decision to discontinue physical therapy, which she had been undergoing for a significant period of time. This evidence was corroborated by the testimony of the nurse case manager. The Commission acted within its province as fact finder in rejecting the claimant's assertions that Dr. Guinand discharged her from his care and referred her to her primary care physician for treatment of her injury. See, e.g., United Airlines v. Hayes, 58 Va. App. 220, 238 (2011) (discussing the finder-of-fact's role in judging witness credibility).

On this record, the Commission did not err in concluding that the claimant failed to demonstrate that Dr. Guinand rendered inadequate treatment or that other circumstances

mandated a change in her treating physician. See generally Apple Constr., 44 Va. App. at 461-62 (agreeing with the Commission that the party attempting to change the treating physician failed to carry the burden of persuasion that such a change was warranted). For these reasons, we affirm the Commission's decision denying the claimant's request for a change in treating physician.

## B. Unauthorized Treatment

Whether the circumstances merit requiring an employer to pay for unauthorized medical treatment also is a mixed question of law and fact. See H.J. Holz, 37 Va. App. at 654-55. Consequently, the factual findings underpinning the Commission's legal conclusions must be reviewed with deference. See id. However, "we review *de novo* the [C]ommission's application of the law to those findings." Portsmouth Sch. Bd. v. Harris, 58 Va. App. 556, 563 (2011). An employee seeking workers' compensation benefits for treatment administered by a health care provider other than the treating physician "bears the burden of proving" the claim "by a preponderance of the evidence." See Advance Auto v. Craft, 63 Va. App. 502, 523 (2014) (quoting Haftsavar v. All Am. Carpet & Rugs, Inc., 59 Va. App. 593, 599 (2012)).

Under Virginia's Workers' Compensation law, once an employee has accepted a doctor as a treating physician, he or she has a duty to "accept . . . necessary medical attention" for the workplace injury administered by that doctor. Davis v. Brown & Williamson Tobacco Co., 3 Va. App. 123, 127 (1986) (quoting Stump v. Norfolk Shipbldg. & Dry Dock Corp., 187 Va. 932, 938 (1948)). An employee may refuse such medical treatment only with "just cause." Id. (applying a predecessor to Code § 65.2-603).

"[R]eimbursement for unauthorized medical treatment should be the rare exception . . . ." H.J. Holz, 37 Va. App. at 653-54 (quoting Shenandoah Prods., Inc. v. Whitlock, 15 Va. App. 207, 213 (1992)). Therefore, "[w]hen an employee seeks treatment other than that provided by

the employer or ordered by the [C]ommission, he or she does so at his or her own peril and risks not being reimbursed." Id. at 654 (first alteration in original) (quoting Shenandoah Prods., 15 Va. App. at 213). Nevertheless, the statute "may not be used to penalize an employee whom the [C]omission finds has reasonably sought to restore her health by seeking additional treatment." Southland Corp. v. Welch, 33 Va. App. 633, 639 (2000).

The law provides that an employee may be justified in seeking alternative medical treatment when "the treatment provided by the employer was inadequate . . . for the employee's condition and the unauthorized treatment received by the claimant was medically reasonable and necessary."[3] H.J. Holz, 37 Va. App. at 653 (quoting Shenandoah Prods., 15 Va. App. at 212).

Here, the record supports the Commission's conclusion that Dr. Guinand's care of the claimant's injury was entirely adequate. See Jeffreys, __ Va. at __ (explaining that appellate courts do not reweigh the evidence). His diagnosis and recommended treatment were similar to those that the claimant received from Dr. Wardell. The similarity of their recommended treatment ended at the point when Guinand concluded that injections were the only remaining viable option for the claimant and Wardell believed that a different type of physical therapy would benefit her. That difference of medical opinion did not render Dr. Guinand's care of the claimant inadequate. In fact, even Dr. Wardell opined that the care provided by Guinand was appropriate until he "discharge[d]" her from medical care, which the record shows that Guinand did not do. Further, the claimant's reported good response to Wardell's treatment does not establish that it was reasonably necessary. Physicians may have a difference of opinion on treatment options without rendering one of those treatments inadequate and the other medically necessary. The claimant's refusal to follow Dr. Guinand's recommended additional treatment of

---

[3] In addition, in order for disputed medical treatment to be reimbursed, the employee must obtain it in good faith. Vital Link, 69 Va. App. at 62-63. The Commission did not reach that issue, nor do we.

injections in conjunction with his assessment that her condition had improved by 40% with the physical therapy and oral medication he had provided prior to her release from physical therapy wholly support the Commission's conclusion that Guinand's care was adequate.

Credible evidence supports the Commission's factual findings underlying its conclusion that the claimant was not justified in obtaining alternative medical treatment. In addition, the Commission correctly applied the relevant law to those facts. See Vital Link, 69 Va. App. at 64. For these reasons, we affirm the Commission's denial of the claimant's request to require the employer to pay for the unauthorized treatment obtained under Dr. Wardell's care.

### III.  CONCLUSION

The Commission's finding that Dr. Guinand provided the claimant with adequate medical treatment was supported by credible evidence. Accordingly, the Commission did not err in finding that the claimant failed to meet her burden of proving that circumstances warranted a change in treating physician or that she was justified in obtaining alternative medical care. Therefore, we affirm the Commission's decision denying the claimant's request for a change in her treating physician and denying benefits for unauthorized medical treatment.

Affirmed.