UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Causey and Senior Judge Clements
Argued at Richmond, Virginia

SUSAN REVELS

                                        MEMORANDUM OPINION* BY
v.        Record No. 0002-22-2          JUDGE JEAN HARRISON CLEMENTS
                                        AUGUST 30, 2022

COSTCO WHOLESALE AND
  COSTCO WHOLESALE CORPORATION

              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          John A. Conrad (The Conrad Firm, on briefs), for appellant.

          C. Ervin Reid (Goodman Allen Donnelly PLLC, on brief), for
          appellees.


      Susan Revels appeals a decision of the Workers' Compensation Commission granting

Costco Wholesale's application for a change in condition and terminating her benefits. Revels

argues that the Commission's decision was contrary to the record evidence and violated her due

process and equal protection rights. Revels also argues that the Commission erred in denying her

application for a change of physician. For the following reasons, we affirm the Commission's

judgment.

                                    BACKGROUND

      "On appeal from a decision of the Workers' Compensation Commission, the evidence

and all reasonable inferences that may be drawn from that evidence are viewed in the light most

favorable to the party prevailing below." *Anderson v. Anderson*, 65 Va. App. 354, 361 (2015)

(quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83 (2005)). On November 7, 2018,

---

      * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Revels suffered a compensable injury after falling from a table and striking her head on a concrete floor at work. At the emergency room, Revels complained of a headache, dizziness, and nausea. She was diagnosed with a concussion with brief loss of consciousness, a post-concussion headache, head injury, and cervical neck pain. Revels was released from the emergency room with instructions not to return to work. In January 2019, the Commission awarded Revels medical benefits and continuing temporary total disability benefits consistent with the terms of the parties' "Award Agreement."

On January 4, 2019, Revels began treatment with Dr. Daniel M. Hardy, a neurologist. At the initial consultation, Revels reported daily headaches, blurred vision, poor handwriting, lightheadedness, and confusion. In addition, she was unable to read more than a few lines at a time or look at a screen for more than a minute. Dr. Hardy diagnosed Revels with traumatic brain injury and opined that she was "unable to return to work." He was optimistic Revels would spontaneously improve with rest and advised her to reintroduce ordinary activities on a gradual basis and return for reassessment.

Revels went to follow up appointments with Dr. Hardy in February, May, August, and October 2019, and February and August 2020. At each appointment, Revels continued to report no improvement in her symptoms, which were minimally responsive to oral medication and home rehabilitation exercises. Revels's gait was "ataxic"[1] during each visit, but she "cross[ed] her feet in front of each other when she walk[ed]" and did not experience involuntary movements. Dr. Hardy noted that Revels did not "appear" to be worse but believed she was struggling with her symptoms. Accordingly, he continued to restrict Revels from returning to work and noted that "concussion rehabilitation services" might be beneficial.

---

[1] According to the record, an ataxic gait is defined as "an unsteady, staggering gait."

In July and August 2020, private investigators hired by Costco followed and recorded Revels. The investigators' videos depicted Revels driving and walking without difficulty and, in one instance, assisting two of her grandchildren into her car. One investigator also recorded Revels on August 17, 2020, as she drove to an appointment with Dr. Hardy and walked inside his office. Although the video depicted Revels walking to and from her appointment without difficulty, Dr. Hardy's notes from that appointment recorded that her gait was very ataxic. Three days later, an investigator recorded Revels as she walked for one mile without difficulty.

On January 25, 2021, Dr. Hardy viewed the investigators' videos which he described as depicting Revels walking "into and out of" her August 2020 appointment "with no ambulation difficulty at all." After viewing the video, Dr. Hardy noted that he had "no objective evidence that her cognitive complaints were false," so he returned Revels to work "with restrictions."

On February 17, 2021, Revels attended a follow-up appointment with Dr. Hardy; he again reported no significant change in her symptoms. During the appointment, Revels walked with a mildly ataxic gait. When Revels realized Dr. Hardy would not continue her work restrictions, she became "angry," "cut the end of [the] appointment short," and walked out of the exam room "normally, unlike when she was receiving her neurological assessment."

Dr. Hardy then returned Revels "to work full-time without restrictions." He opined that "it would be unlikely for her to continue to experience symptoms of her traumatic brain injury so many years after the initial incident" and was skeptical of her concussion symptoms. In his post-care questionnaire, Dr. Hardy indicated that he had discharged Revels from his care. Nevertheless, he indicated that she could follow up with him as needed and he was still willing to see her as a patient. Revels did not return to see Dr. Hardy.

On February 22, 2021, Costco filed an application to terminate Revels's benefits because Dr. Hardy had released her to pre-injury work without restrictions. On May 17, 2021, Revels

filed an application for the Commission to authorize a change in her treating physician. At the hearing on the motions, Revels testified that she had not received any medical treatment for her traumatic brain injury since her last appointment with Dr. Hardy. She denied exaggerating or misrepresenting any of her symptoms. Revels testified that Dr. Hardy thought her symptoms were real, but her walk was exaggerated. Revels stated that during her February 17, 2021 appointment, Dr. Hardy opened the door and dismissed her without providing any paperwork. As she was leaving, Dr. Hardy stood in the doorway, so she had to "scooch up" against the door jamb. Revels admitted she was mad during the appointment and told Dr. Hardy that she would lose everything, including her retirement, benefits, and job. Revels asserted that she believed she had been discharged from Dr. Hardy's practice because neither he nor his staff told her she could return as needed. Revels testified that she would return to work if she was able, but she often fell because of her balance and her headaches.

At the conclusion of the hearing, the deputy commissioner found that Costco had presented credible, reasonable, and uncontradicted medical evidence that Revels could perform her pre-injury duties without restrictions. Accordingly, he terminated Revels's temporary total disability benefits. The deputy commissioner also found that Revels had failed to prove that she was entitled to a new treating physician.

On review, the Commission affirmed the deputy commissioner and found that Revels had no work restrictions and was capable of her pre-injury employment. The Commission considered Revels's testimony regarding her ongoing symptoms but gave "great weight" to Dr. Hardy's opinions as Revels's long-standing treating physician. The Commission also found that Dr. Hardy did not refuse to provide ongoing medical care; rather, Revels left the office after Dr. Hardy indicated he was releasing her to work with no restrictions. The Commission found that Dr. Hardy was willing to treat Revels if she returned. This appeal follows.

- 4 -

ANALYSIS

Decisions of the Commission "shall be conclusive and binding as to all questions of fact." Code § 65.2-706(A). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" *Jeffreys v. Uninsured Employer's Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). Instead, "we are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." *Artis*, 45 Va. App. at 83-84 (quoting *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988)). "'The scope of a judicial review of the fact finding function of a workers' compensation commission . . . is "severely limited, partly in deference to the agency's expertise in a specialized field."'" *Roske v. Culbertson Co.*, 62 Va. App. 512, 517 (2013) (quoting *Southside Va. Training Ctr. v. Ellis*, 33 Va. App. 824, 828 (2000)). Conversely, "the [C]ommission's legal determinations are not binding on appeal and will be reviewed *de novo*." *Id.* (quoting *Wainwright v. Newport News Shipbuilding & Dry Dock Co.*, 50 Va. App. 421, 430 (2007)).

I. Termination of Revels's Benefits

Revels argues that the Commission erred in terminating her benefits because its findings of fact and conclusions of law were contrary to the evidence and applicable Virginia law and deprived her of her due process and equal protection rights.[2] Revels argues that the evidence

---

[2] We do not consider Revels's constitutional arguments because she did not present them to the Commission. Accordingly, they are waived on appeal. Rule 5A:18. Although there are exceptions to Rule 5A:18, Revels does not invoke them, and the Court will not apply the exceptions *sua sponte*. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc). In addition, although Revels references her constitutional arguments in her assignments of error, she presented no authority or law in support of those arguments until her reply brief. *See Palmer v. Atlantic Coast Pipeline, LLC*, 293 Va. 573, 580 (2017) (holding that an argument was waived

failed to demonstrate that she was "capable of performing her pre-accident job duties at Costco." She acknowledges that the evidence need not prove that a treating physician is "familiar with the physical requirements of the job" when "uncontradicted medical evidence does not suggest any physical limitation." Nevertheless, she argues that Dr. Hardy's February 17, 2021 "Progress Note," returning her to work without any restrictions, was contradicted by other evidence, including her unrefuted testimony and Dr. Hardy's January 25, 2021 note returning her to work with restrictions. Accordingly, Revels maintains that the Commission erred by granting Costco's application to terminate her benefits without requiring it to prove that she was "capable of performing her pre-injury employment."

"[A] change of condition is not a new injury but is 'a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded, suspended, or terminated which would affect the right to, amount of, or duration of compensation.'" *Vital Link, Inc. v. Hope*, 69 Va. App. 43, 57 (2018) (quoting Code § 65.2-101). "Upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Commission may review any award of compensation and on such review may make an award ending, diminishing or increasing the compensation previously awarded." *Id.* (quoting Code § 65.2-708).

In assessing an application alleging that a claimant can return to pre-injury work, "[t]he threshold test of compensability is whether the employee is 'able fully to perform the duties of [her] preinjury employment.'" *Starbucks Coffee Co. v. Shy*, 61 Va. App. 229, 243 (2012) (quoting *Celanese Fibers Co. v. Johnson*, 229 Va. 117, 120 (1985)). "That burden is met by *uncontradicted* evidence which establishes that no restrictions have been placed on the

when it was "merely referenc[ed]" in the opening brief and then presented fully in the reply brief).

claimant's ability to return to work." *Fingles Co. v. Tatterson*, 22 Va. App. 638, 642 (1996) (emphasis added) (citing *Mace v. Merchants Delivery Moving & Storage*, 221 Va. 401, 403 (1980)). "[W]here uncontradicted medical evidence does not suggest any physical limitation on a claimant, the employer need not also show that the physician was familiar with the physical requirements of the job and the type of physical limitations which would prohibit its performance." *Id.* (citing *Mace*, 221 Va. at 403).

The medical evidence in this case was uncontradicted. After evaluating Revels on February 17, 2021, Dr. Hardy doubted that Revels had "reliably reported" her symptoms, inferred that she had misrepresented her gait, and returned her "to work full-time without restrictions." Those conclusions are supported by the video evidence depicting Revels assisting grandchildren into her car and walking up to a mile at a time without difficulty while continuing to present with an ataxic gait in appointments with Dr. Hardy. Indeed, despite presenting as "mildly ataxic" during the February 17, 2021 appointment, she rushed out of the exam room without difficulty when she realized Dr. Hardy would not be continuing her work restrictions.

Dr. Hardy's January 25, 2021 "Progress Note," which returned Revels to work with some restrictions, does not contradict the above evidence. He issued that note after viewing the investigators' videos depicting Revels walking without difficulty. He did not return her to work without restrictions, however, until after he examined Revels in person nearly a month later. Additionally, although Revels testified regarding her continuing symptoms and pre-injury job requirements, the Commission gave "great weight to the uncontradicted medical opinion of her long-standing treating neurologist regarding her ability to work." It was within the Commission's purview to weigh and consider the evidence; we do not reweigh the evidence before the Commission. *Jeffreys*, 297 Va. at 87 (quoting *Caskey*, 225 Va. at 411).

In sum, the uncontradicted medical evidence in this case "establishe[d] that no restrictions have been placed on the claimant's ability to return to work." *Fingles Co.*, 22 Va. App. at 642 (citing *Mace*, 221 Va. at 403). Accordingly, the Commission did not err by granting Costco's application and terminating Revels's benefits.

## II. Change in Physician

Revels argues that the Commission erred by denying her application for a change of physician because Dr. Hardy discharged her and abandoned her care. In pressing this argument, Revels relies on her own testimony that Dr. Hardy dismissed her from the February 17, 2021 appointment and forced her to "scooch" past him as she left. She also references Dr. Hardy's response to a July 9, 2021 questionnaire where he indicated that he had discharged her as a patient. Finally, Revels maintains that Dr. Hardy's care was inadequate because no progress had been made with her symptoms despite her adherence to his prescribed medication and home rehabilitation exercise regime.

"The party seeking the change in the treating physician bears the burden presenting facts to the Commission sufficient to support the change." *Yahner v. Fire-X Corporation*, 70 Va. App. 265, 274 (2019). "Whether a party has established that the circumstances warrant a change in the treating physician presents a mixed question of law and fact." *Id.* "Once 'an employee enters into a course of treatment with a physician,' he or she cannot change from that doctor unless referred by that specific physician, 'confronted with an emergency,' or 'given permission by the employer,' its insurer, or the Commission." *Id.* (quoting *Food Lion, LLC v. Wright*, 53 Va. App. 23, 26 (2008)).

A change may be ordered if "the physician is rendering 'inadequate treatment,' the injury requires 'a specialist in a particular field and [one] is not being provided,' the employee's health is not improving 'without any adequate explanation,' 'conventional modalities of treatment are

not being used,' or there is 'no plan of treatment for long-term disability cases.'" *Id.* (alteration in original) (quoting *Apple Constr. Corp. v. Sexton*, 44 Va. App. 458, 461 (2008)). "[W]hether a treating physician has discharged a patient 'is a factual determination which must be proven by clear and convincing evidence in light of the high professional responsibility' expected of a medical doctor 'to provide patient care and treatment.'" *Id.* at 276 (quoting *Jensen Press v. Ale*, 1 Va. App. 153, 157 (1985)). "This factual question 'most often is determined by the express intent of the physician' but may sometimes 'require analysis of the total circumstances.'" *Id.* (quoting *Jensen*, 1 Va. App. at 157).

The record demonstrates that Dr. Hardy consistently examined Revels and monitored her symptoms and ability to work. Over more than two years, he prescribed medications and referred her to physical therapy and rehabilitation services. His decision to release Revels to work without restrictions does not demonstrate that he refused to treat Revels or abandoned her care. Indeed, Dr. Hardy's notes from the February 17, 2021 appointment indicated that she was to follow up as needed, and Dr. Hardy also indicated that he would continue to treat her as a patient. The record establishes that Dr. Hardy only ceased providing treatment and medications to Revels after she refused to discuss her migraines and stormed out of the February 17, 2021 appointment when she learned that Dr. Hardy would lift her work restrictions. Although Revels disagreed with Dr. Hardy's assessment of her work capacity, such disagreement does not establish that she received medically inappropriate or inadequate care. In addition, the Commission was entitled to conclude—based on the video evidence—that Revels's symptoms did not improve because she had been exaggerating them.

In sum, Revels failed to prove that Dr. Hardy abandoned her or provided medically inappropriate or inadequate care. Thus, the Commission did not err by rejecting her application to change treating physicians.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Commission.

*Affirmed.*