UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, O'Brien and AtLee
Argued at Lexington, Virginia


SHAUN STEVEN REED

MEMORANDUM OPINION[*] BY
v.        Record No. 1548-22-3        JUDGE MARY GRACE O'BRIEN
NOVEMBER 8, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Charles N. Dorsey,[1] Judge

John S. Koehler (Jennifer L. Froeschl; The Law Office of James
Steele, PLLC; Nester Froeschl, PLLC; on brief), for appellant.

Aaron J. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Shaun Steven Reed was convicted in a bench trial of attempted abduction and assault, in

violation of Code §§ 18.2-47 and 18.2-57,[2] respectively. Reed contends that the evidence was

insufficient to prove that he possessed the requisite criminal intent to commit the offenses. For the

following reasons, we affirm the convictions.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The Honorable David B. Carson presided over the bench trial.

[2] The sentencing order incorrectly cites Code § 18.2-54 for the assault conviction, and
therefore we remand this case to the trial court for correction of the clerical error. *See* Code
§ 8.01-428(B).

## BACKGROUND[3]

On the evening of October 16, 2021, Joel Mendez was on his side porch when Reed approached. Mendez asked, "can I help you?" and inquired if Reed had a problem, to which Reed responded, "I don't know. Do you?" Mendez told him to leave the property. Mendez noticed a small metal object in Reed's hand. A minute later, Mendez heard his wife, Tony, screaming from outside the house. Mendez saw Reed standing near Tony and their four-year-old daughter. Mendez again demanded that Reed leave, but Reed did not respond. Reed eventually walked to a neighboring property and was told by that neighbor to leave. Mendez called the police.

Tony testified that she was outside watching her daughter ride her scooter and became concerned when she saw Reed approach the driveway. Reed, a stranger, was smiling and staring at her daughter, and Tony "felt something was off." Reed got close to the child, so Tony walked toward her. Reed asked permission to enter the driveway. When Tony refused, Reed reached down with both hands and leaned toward her daughter "as if he was going to grab [her]." Tony grabbed her daughter and ran toward the house screaming. Tony described her daughter as "scared." Reed lifted his shirt and said twice, "don't worry. It's just a gardening tool." Tony observed a metal object sticking out of Reed's pants.

Roanoke County Police Officer Brandon Buchanan arrived at the scene and found Reed standing in the middle of the street. Reed could not explain his presence in the area and stated that he had walked there from Lynchburg. Officer Buchanan observed that Reed's pupils "did not appear to be normal," his speech was nonsensical, and he seemed anxious. Officer Buchanan did not detect an odor of alcohol about Reed's person and did not administer any field sobriety tests.

---

[3] "In accordance with familiar principles of appellate review," we state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Scott v. Commonwealth*, 292 Va. 380, 381 (2016).

Officer Buchanan arrested Reed on an outstanding warrant, searched him, and recovered a pair of shears from Reed's pocket.

The court admitted a police report from Roanoke Police Sergeant Cara Jacobs, in lieu of her testimony, without objection. In her report, Sergeant Jacobs stated that she had difficulty understanding Reed because "most of his statements were incoherent and did not follow a logical train of thought." Reed's eyes were bloodshot and watery and his pupils were dilated, but he denied consuming alcohol or smoking marijuana that day.

Reed testified that he was prescribed medications for depression and anxiety but had not taken them for two or three days before the incident. On the day of the offense, he was looking at apartments to rent. He was not familiar with the area and got lost in the neighborhood.[4] He stated that he began to experience a "delirium" and claimed he was hearing voices. According to Reed, "the delirium was pretty bad" when he approached Mendez, and he did not recall seeing the child or attempting to grab her. He only recalled hearing Tony say that she was going to call the police. Reed testified that he "started detoxing really badly off" his medication after his arrest and was sent to the hospital. Reed explained that he carried the shears to strip wires for his work as a data technician.

The court found sufficient evidence to convict Reed on both charges. The court found that Reed's testimony was not "believable in any respect," and instead found the child's parents "wholly credible." Following a sentencing hearing, the court sentenced him to five years and twelve months in prison, with all time suspended.

---

[4] Officer Buchanan testified that the nearest apartment complex was "at least a few miles" away from the location of the offense.

ANALYSIS[5]

When the sufficiency of the evidence is challenged on appeal, "an appellate court views the evidence 'in the light most favorable to the Commonwealth, the prevailing party below.'" *Williams v. Commonwealth*, 71 Va. App. 462, 483 (2020) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)).  Accordingly, we "discard all evidence of the accused that conflicts with that of the Commonwealth and regard as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible therefrom." *Henry v. Commonwealth*, 63 Va. App. 30, 37 (2014) (quoting *Holcomb v. Commonwealth*, 58 Va. App. 339, 346 (2011)).

"The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." *Wilkins v. Commonwealth*, 18 Va. App. 293, 295 (1994) (en banc) (quoting *Martin v. Commonwealth*, 4 Va. App. 438, 443 (1987)).  Under this standard, an "appellate court does not 'retry the facts,' reweigh the evidence, or make its own determination of the 'credibility of [the] witnesses.'" *Yahner v. Fire-X Corp.*, 70 Va. App. 265, 273 (2019) (alteration in original) (quoting *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 87 (2019)).  Instead, "[t]he question on appeal[] is whether 'any rational trier of fact could have found the essential

---

[5] For the first time at oral argument, Reed's counsel also claimed that the evidence was insufficient to sustain Reed's conviction for assault because the assault was incidental to the attempted abduction, and because the Commonwealth failed to prove that the child's fear was contemporaneous with Reed's actions.  These arguments are outside the scope of Reed's assignments of error, which only challenge the sufficiency of the evidence to prove his intent. We are "limited to reviewing the assignments of error presented by the litigant." *Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017); Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court.").  Thus, we will "not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error." *Banks*, 67 Va. App. at 290; *see also Jeter v. Commonwealth*, 44 Va. App. 733, 740-41 (2005) (holding that arguments cannot be raised for the first time in a reply brief or at oral argument because the appellee does not have a meaningful opportunity to respond).

elements of the crime beyond a reasonable doubt.'" *Ingram v. Commonwealth*, 74 Va. App. 59,

76 (2021) (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)).

"An attempt is composed of two elements: the intent to commit the crime, and a direct,

ineffectual act done towards its commission." *Parsons v. Commonwealth*, 32 Va. App. 576, 582

(2000). "A direct, ineffectual act, done toward [the] commission of an offense need not be the last

proximate act toward completion, but 'it must go beyond mere preparation and be done to produce

the intended result.'" *Fortune v. Commonwealth*, 14 Va. App. 225, 229 (1992) (quoting

*Tharrington v. Commonwealth*, 2 Va. App. 491, 494 (1986)).

> Any person who, by force, intimidation or deception, and
> without legal justification or excuse, seizes, takes, transports, detains
> or secretes another person with the intent to deprive such other
> person of his personal liberty or to withhold or conceal him from any
> person, authority[,] or institution lawfully entitled to his charge, shall
> be deemed guilty of "abduction."

Code § 18.2-47(A).

"To sustain a conviction for assault, the Commonwealth must prove 'an attempt or offer,

with force and violence, to do some bodily hurt to another.'" *Parish v. Commonwealth*, 56

Va. App. 324, 329 (2010) (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)); Code

§ 18.2-57(A).

> The attempt or offer to do bodily harm "occurs when an assailant
> engages in an overt act intended to inflict bodily harm [while he] has
> the present ability to inflict such harm or [the assailant] engages in an
> overt act intended to place the victim in fear or apprehension of
> bodily harm and creates such reasonable fear or apprehension in the
> victim."

*Parish*, 56 Va. App. at 329-30 (alterations in original) (quoting *Clark v. Commonwealth*, 279 Va.

636, 641 (2010)). "An assault may occur even though the victim is not aware of any acts directed at

him, provided the actor intends to touch offensively rather than accidentally or negligently."

*Adams*, 33 Va. App. at 469.

Reed contends the evidence was insufficient to prove that he intended to abduct or assault the child. He argues that there was no direct evidence of his intent and that "while [the court] discounted [his] testimony concerning his state of mind, the testimony of the law enforcement officers" supported his theory that he was suffering "from some form of mental confusion."

"Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (quoting *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011)). In fact, "[p]roving intent by direct evidence often is impossible." *Adams*, 33 Va. App. at 470. Thus, "[l]ike any other element of a crime, it may be proved by circumstantial evidence." *Id.* at 471. A fact finder is permitted to "infer that every person intends the natural, probable consequences of his or her actions," *Ellis v. Commonwealth*, 281 Va. 499, 507 (2011), and may discern the defendant's state of mind "by his acts and conduct," *Burton*, 281 Va. at 627 (quoting *Ridley v. Commonwealth*, 219 Va. 834, 836 (1979)). "Intent is a factual determination, and a [fact finder]'s decision on the question of intent is accorded great deference on appeal and will not be reversed unless clearly erroneous." *Towler v. Commonwealth*, 59 Va. App. 284, 297 (2011).

The evidence, viewed in the light most favorable to the Commonwealth, proved that Reed was behaving strangely when he approached the child and, after being told he did not have permission to enter the property, leaned over and attempted to grab the child with both hands, causing her mother to scream for help. Reed was a stranger to the family. The mother testified that her child was "scared." From the "nature of the overt act and the surrounding circumstances," *Clark*, 279 Va. at 642, a reasonable fact finder could infer that Reed intended to deprive the child of her personal liberty, even if only for the briefest of moments, and place her in fear of bodily harm— "the natural, probable consequences of [his] actions," *Ellis*, 281 Va. at 507.

Aside from Reed's own testimony, the record is devoid of any evidence, such as medical records or expert testimony, supporting Reed's claim that he was suffering from prescription medication withdrawal or mental illness. It "is within the exclusive province of the [fact finder]" to determine the credibility of the witnesses, and we do not find that the court was plainly wrong in finding Reed's testimony unworthy of belief and rejecting his self-serving claims about his state of mind and his speculation about its cause. *Maust v. Commonwealth*, 77 Va. App. 687, 702 (2023) (en banc) (alteration in original) (quoting *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015)); *see also Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998))). Reed implicitly invites us to reweigh the significance of the officers' observations of his demeanor, which we are not permitted to do. *Yahner*, 70 Va. App. at 273. "A fact[]finder's resolution of conflicting facts, as well as competing inferences, receives 'the highest degree of appellate deference.'" *Coleman v. Commonwealth*, 52 Va. App. 19, 23 n.2 (2008) (quoting *Thomas v. Commonwealth*, 48 Va. App. 605, 608 (2006)).

In sum, in light of our standard of review, a rational fact finder could conclude from these circumstances that Reed possessed the requisite criminal intent, and the court was not plainly wrong in finding him guilty of the charged offenses.

CONCLUSION

For these reasons, we affirm the court's judgment and remand the matter for correction of the clerical error in the sentencing order.

*Affirmed and remanded.*