COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Huff, O'Brien and Athey
Argued at Norfolk, Virginia


ERIC ANTONIO NEWSOME

                                               OPINION BY
v.        Record No. 0686-23-1          JUDGE MARY GRACE O'BRIEN
                                                JUNE 11, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

Richard H. Doummar (John O. Venner, on brief), for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Eric Antonio Newsome appeals his convictions for assault and battery by mob, in

violation of Code § 18.2-42; disorderly conduct, in violation of Code § 18.2-415; and

participating in a riot, in violation of Code § 18.2-405.  Appellant challenges the sufficiency of

the evidence to support his convictions.  For the following reasons, we affirm.

BACKGROUND

On appeal, we state the facts in the light most favorable to the Commonwealth.  *Poole v.*

*Commonwealth*, 73 Va. App. 357, 360 (2021).

On July 12, 2020, S.G. (the victim) was celebrating her sister's birthday at The Main

hotel in downtown Norfolk.  Around 2:30 a.m., the victim left the hotel to get her mother from a

nearby parking garage.  As she exited, she walked past a group of approximately 15 to 20 people

sitting on a wall outside The Main.  Appellant was with this group, as was his girlfriend, Tamara

Brown.  As the victim walked past, a woman from the group exclaimed, "Look at her.  She don't

have any draws [sic] on.  Look at her ass."  The woman urged others in the group to look at the

victim. But the victim, who did not know anyone in the group, ignored them and kept walking away.

Unable to find her mother, the victim started to return to The Main. The group stood up and began acting "rowdy" as the victim passed by. Brown pointed at the victim and yelled something the victim could not hear. The group surrounded the victim in a circle. Brown squatted down, pointed at the victim, and made statements about wanting to "smack" and "lick [the victim's] ass." The victim said nothing and tried to get away, but the group "had [her] surrounded." Just as the victim was able to distance herself from the group, Brown "dramatic[ally]" set her drink down, took her earrings off, and prepared to fight. The victim told Brown she did not want to fight, but she was unable to flee because the group surrounded her again and blocked her escape. The victim called her sister for help, and a woman in the group "smacked [the] phone out of [her] hand," breaking it. Brown then swung at the victim, but the victim ducked and backed away, begging Brown to leave her alone.

Brown cornered the victim against the outer wall of The Main and "charg[ed] at her." Members of the group continued to surround the victim and encouraged Brown's attack, asking to be "tag[ged]" in and yelling, "Beat her ass," "Get her ass down," and "Look at her butt." As Brown attacked, appellant grabbed the victim's left arm, and another man from the group grabbed her right arm. The victim "couldn't get free." The victim stated that appellant was "in the middle of the whole chaos."

The victim's sister and brother-in-law, Purnell Sturdivant, received her call for help and came outside. As they exited The Main, they saw the group of people making a "commotion" while Brown attacked. Sturdivant attempted to rescue the victim, but a man from the group hit him in the face with a bottle. Sturdivant lost consciousness and collapsed. Brown continued to attack the victim and would not "let [her] go."

The group "scatter[ed]" once Sturdivant collapsed. Appellant attempted to pull Brown away from the victim and said, "Okay bae, that's enough." Appellant remained after the attack and spoke with the police. Both the victim and Sturdivant were injured in the attack.

Various people were charged with criminal offenses as a result of the incident. Appellant was charged with disorderly conduct, participating in a riot, and malicious wounding by mob. After a bench trial, the court found appellant guilty of disorderly conduct and participating in a riot as charged, and guilty of assault and battery by mob as a lesser-included offense of malicious wounding by mob. The court found reasonable doubt as to whether appellant shared the mob's intent to injure Sturdivant, but concluded that appellant was "clearly part of the mob when it turned on [the victim] and when she suffered her injuries."

ANALYSIS

In appellant's three assignments of error, he challenges the sufficiency of the evidence to support each of his convictions. He argues the evidence did not support the court's findings that he was a member of a mob, that he "caused acts of violence or intended to cause inconvenience, annoyance, or alarm or recklessly created a risk thereof," and that he "acted together with two or more people in the unlawful use of force or violence and that the force or violence seriously jeopardized the public safety, peace, or order."

When reviewing a challenge to the sufficiency of the evidence, an appellate court has a limited role and examines a trial court's fact finding "with the highest degree of appellate deference." *Meade v. Commonwealth*, 74 Va. App. 796, 815 (2022) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Appellate courts are not tasked with 'say[ing] that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt . . . as an original proposition[.]'" *Commonwealth v. Garrick*, ___ Va. ___, ___ (May 9, 2024)

- 3 -

(alterations in original) (quoting *Commonwealth v. Barney*, 302 Va. 84, 97 (2023)). "Answering that question is the province of a fact[]finder, whether judge or jury, in a trial court." *Id.*

Instead, we presume that the trial court's ruling is correct and will not disturb the judgment "unless it is plainly wrong or without evidence to support it." *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). Under this standard, an appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Williams v. Commonwealth*, 278 Va. 190, 193 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). Rather, the only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010). In asking this question, "an appellate court is *required* to 'review the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court.'" *Garrick*, ___ Va. at ___ (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323 (2018)).

"Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)). An appellate court does not "'retry the facts,' reweigh the evidence, or make its own determination of the 'credibility of [the] witnesses.'" *Yahner v. Fire-X Corp.*, 70 Va. App. 265, 273 (2019) (alteration in original) (quoting *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 87 (2019)).

I.  The evidence was sufficient to convict appellant of assault and battery by mob.

In his first assignment of error, appellant contends that the Commonwealth failed to prove that a mob existed, or, alternatively, that he was a member of the mob.  He claims his testimony that he told Brown "that's enough" and cooperated with the police "dispel[s] any contention that he assembled" with the purpose and intent of committing an assault and battery.  Appellant's arguments, however, fail to view the evidence in the light most favorable to the Commonwealth.

Under Code § 18.2-42, "[a]ny and every person composing a mob which shall commit a simple assault or battery shall be guilty of a Class 1 misdemeanor."  A "mob" is defined as "[a]ny collection of people, assembled for the purpose and with the intention of committing an assault or a battery upon any person or an act of violence."  Code § 18.2-38.  To sustain a conviction for assault and battery by a mob, "the evidence must establish that the accused was a member of a mob and that the mob committed simple assault or battery."  *Commonwealth v. Leal*, 265 Va. 142, 146 (2003).

"[I]ndividuals who are lawfully assembled may become members of a 'mob' without great deliberation."  *Hamilton v. Commonwealth*, 279 Va. 94, 103 (2010) (quoting *Harrell v. Commonwealth*, 11 Va. App. 1, 7 (1990)).  Whether a lawfully assembled group transforms into a mob "depends upon the circumstances," and "no particular words or express agreements are required" to prove a change in a group's purpose or intentions.  *Id.* at 103-04 (quoting *Harrell*, 11 Va. App. at 7-8).

Every person composing a mob is criminally culpable under Code § 18.2-42.  *See id.* at 104.  Criminal accountability flows from the membership itself, "regardless of whether the member aids and abets in the assault and battery."  *Id.* (quoting *Harrell*, 11 Va. App. at 8).

Evidence that a person "actively encouraged, aided, or countenanced" a mob assault is probative of membership, but not required. *Id.* at 104 (quoting *Harrell*, 11 Va. App. at 8).

Viewing the evidence in the light most favorable to the Commonwealth, a rational fact finder could conclude that a mob had formed during the victim's attack and that appellant was part of that mob.

The victim testified that a "rowdy" group surrounded her while Brown pointed at her, hurled invectives toward her, and prepared to fight her. Each time the victim tried to get away, the group blocked her escape by amassing around her. A woman in the group "smacked the phone out of [the victim's hand]" as she called for help. As Brown attacked, members of the group shouted encouragements and asked to be "tag[ged] in." The victim unequivocally stated that appellant was part of this group. Indeed, she recounted how appellant grabbed her left arm while Brown assaulted her so she "couldn't get free."[1]

Although the group may have lawfully assembled before encountering the victim, their later actions clearly establish that they had transformed into a mob. The group encouraged Brown as she attacked, attempted to prevent the victim from calling for help, and blocked the victim's escape several times while Brown pursued and attacked her. These circumstances demonstrate the group's collective purpose and intent to harm her. *See* Code § 18.2-38.

---

[1] At oral argument, appellant claimed that the video evidence submitted at trial did not support the victim's testimony that appellant grabbed her arm during Brown's attack so she "couldn't get free." Instead, he argued that the video merely showed "nothing but a guy trying to help." His intent in grabbing her arm, however, was a determination to be made by the fact finder. It is well-established that this Court "owe[s] deference to the trial court's interpretation of all of the evidence, including video evidence that we are able to observe as much as the trial court did." *Lucas v. Commonwealth*, 75 Va. App. 334, 343 (2022) (quoting *Meade*, 74 Va. App. at 806). The "fact[]finder . . . views video and other evidence to determine what it believes happened;" on appeal, this Court "view[s] video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational fact[]finder could have viewed it as the trial court did." *Id.* (quoting *Meade*, 74 Va. App. at 806). Accordingly, we defer to the trial court's interpretation of the video evidence.

Appellant emphasizes that he later tried to pull Brown away from the victim and cooperated with the police, but these subsequent actions do not negate the evidence that he was a member of the mob when the victim was attacked. Indeed, not only was appellant part of the mob, but he also did more than what the law requires for criminal accountability under Code § 18.2-42—he aided the attack by holding the victim's arm to prevent her from escaping. *See Harrell*, 11 Va. App. at 8 ("[C]riminal accountability flows from being a member of the mob, regardless of whether the member aids and abets in the assault and battery.").

Appellant relies on *Harrell v. Commonwealth*, 11 Va. App. 1 (1990), to support his argument that the events were merely a "one-on-one fight" between the victim and Brown and that other people were just "standing around." *Harrell* is distinguishable.

In *Harrell*, this Court reversed a defendant's conviction for malicious wounding by mob because the evidence was insufficient to show that a mob had formed. *Id.* at 10. A group gathered outside after a large house party and had been "calm and receptive" when a neighbor told them to disperse, "with the exception of one individual." The defendant struck another neighbor who came to help. *Id.* "Given the fact that the group was peaceable" when the neighbor stepped in, the Court reasoned, "the fact that one person struck [the neighbor] in no way established that they came together as a mob." *Id.* at 11. Unlike *Harrell*, however, the evidence here showed that the group that surrounded the victim was far from "peaceable." *Id.* The group actively encouraged and assisted in Brown's attack, showing that "they came together as a mob." *Id.*

Accordingly, the court's findings that a mob had formed, and that appellant was part of that mob, were not plainly wrong or without evidentiary support.

II.  The evidence was sufficient to convict appellant of disorderly conduct.

In his second assignment of error, appellant argues that the evidence was insufficient to support his conviction for disorderly conduct because "there is no record evidence that [he] individually abused or threatened to violently abuse a person."  He contends the evidence proved that he merely "came across a one-on-one fight" and "did not know any of the bystanders and had no intent to harm anyone."  Again, appellant's arguments are erroneously premised on a view of the evidence in the light most favorable to him, rather than in the light most favorable to the Commonwealth.  *See Sullivan*, 280 Va. at 676; *see also Garrick*, ___ Va. at ___.

"A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he[, i]n any . . . public place[,] engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed[.]"  Code § 18.2-415(A)(1).  The "question as to whether a particular act is disorderly conduct depends largely on the facts in the particular case, and in the determination of such question not only the nature of the particular act should be considered but also the time and place of its occurrence as well as all the surrounding circumstances."  *Keyes v. City of Virginia Beach*, 16 Va. App. 198, 200 (1993) (quoting *Collins v. City of Norfolk*, 186 Va. 1, 5 (1947)).

The evidence here was sufficient to show that appellant actively participated in a mob attack and did not merely "c[o]me across a one-on-one fight."  The court was permitted to disbelieve appellant's claims that he "did not know any of the bystanders and had no intent to harm anyone" and conclude that he was lying to conceal his guilt.  *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) ("[I]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that

the accused is lying to conceal his guilt." (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011))).

The court instead credited the victim's testimony that appellant held her left arm while Brown attacked—conduct that had a "direct tendency to cause acts of violence by the person [to whom] . . . such conduct is directed." Code § 18.2-415(A)(1). Appellant does not challenge the victim's testimony as inherently incredible but implicitly suggests that this Court should reweigh his testimony against hers. An appellate court, however, does not "'retry the facts,' reweigh the evidence, or make its own determination of the 'credibility of [the] witnesses.'" *Yahner*, 70 Va. App. at 273 (alteration in original) (quoting *Jeffreys*, 297 Va. at 87); *see also Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (noting that an appellate court will not disturb the fact finder's conclusions on witness credibility unless the appellate court concludes "that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief'" (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000))).

Accordingly, a rational fact finder could find appellant guilty of disorderly conduct, and the court's ruling was not plainly wrong or without evidence to support it.

III.  The evidence was sufficient to convict appellant of participating in a riot.

Finally, in his third assignment of error, appellant argues that the evidence was insufficient to support his conviction for participating in a riot because the "record is devoid of any collusion or acts of violence on [appellant's] part."

Under Code § 18.2-405, a riot is "[a]ny unlawful use, by three or more persons acting together, of force or violence which seriously jeopardizes the public safety, peace[,] or order." In essence, a riot is "an unlawful assembly carried into execution." 7 Ronald J. Bacigal, *Virginia Practice Series: Criminal Offenses and Defenses* 576 (2023-2024 ed.). Code § 18.2-405 imposes a form of collective liability; if the defendant acts together with two or more participants to

engage in force or violence, the actions of the group are attributable to each participant. *See* Code § 18.2-405; *see also* 7 Bacigal, *supra*, at 576-77. In addition to proving the group's existence and its unlawful use of force or violence, the Commonwealth must also prove that the use of force or violence "seriously jeopardize[d] the public safety, peace or order." 7 Bacigal, *supra*, at 577 (quoting Code § 18.2-405). Mere presence is insufficient to support a conviction for rioting. *Jones v. Commonwealth*, 210 Va. 299, 303 (1969) (considering a predecessor statute to Code § 18.2-405, § 18.1-254.1).

The evidence, considered under the applicable standard of review and the plain language of the statute, is sufficient to support appellant's conviction. The evidence established that appellant was not merely present during the attack; it showed that he, together with another person, grabbed the victim's arms while Brown, a third participant, attacked her. Moreover, he was part of a group of approximately 15-20 people who used unlawful force to prevent the victim from fleeing from Brown's attack. These actions constitute an unlawful use of force, which seriously jeopardized the public safety, peace, or order. *See* Code § 18.2-405; 7 Bacigal, *supra*, at 576-77. That the use of force seriously jeopardized the public safety, peace, or order is further evidenced by the mob's later attack on Sturdivant.

Thus, a rational fact finder could find appellant guilty of participating in a riot, and the court's ruling was not plainly wrong or without evidence to support it.

CONCLUSION

For these reasons, we affirm the court's judgment and uphold appellant's convictions.

*Affirmed.*